UNITED STATES, Appellant

v

GERARD DREXLER, Seaman Apprentice, U. S. Navy, Appellee

9 USCMA 405, 26 CMR 185

No. 10,830

Decided June 27, 1958

*Major Charles R. Larouche*, USMC, argued the cause for Appellant, United States.

*Captain F. D. Clements*, USMC, argued the cause for Appellee, Accused.

Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Determining that the charges on which the accused was convicted were multiplicious, a board of review dismissed the less serious charge and reassessed the sentence. The Judge Advocate General has certified the case to this Court for review of the following question:

"Was the action of the Board of Review in setting aside the finding on Charge II correct as a matter of law?"

An act which constitutes but a single offense should not be made the basis for several charges. To meet the exigencies of proof, the Government may properly allege one offense in different ways. Manual for Courts-Martial, United States, 1951, paragraph 26*b*; United States v Universal C. I. T.

**407**

Credit Corp., 344 US 218, 73 S Ct 227, 97 L ed 260; Dealy v United States, 152 US 539, 14 S Ct 680, 38 L ed 545. However, when it is mani- fest that one charge is identical to another, a motion to dismiss one or the other is proper. Thus, we said in United States v Strand, 6 USCMA 297, 306, 20 CMR 13: "The Manual cautions against using one transaction as a basis for an unreasonable multiplication of charges. Paragraph 26*b*; United States v Keith, 1 USCMA 442, 4 CMR 34. If the accused believes that the charges are multiplicious, he should move to dismiss one or more of them. Manual, supra, paragraph 67*b*, page 96. The law officer may grant the motion, deny it, or, as he did here, reserve decision on it until the facts are developed and he is better able to evaluate their legal effect."

The practice we approved in the *Strand* case accords with that in the Federal criminal courts. United States v Universal C. I. T. Credit Corp., supra; United States v General Electric Co., 40 F Supp 627 (SD NY) (1941). In the *Universal C. I. T. Credit Corporation* case, the trial judge dismissed five counts of a multiple count information because they duplicated the allegations of count 1. In the *General Electric Co.* case, the District Court determined that counts 1 and 2 of a 2 count indictment were the same. It denied a defense motion to quash count 1 only because it believed that "the safer course would be to leave the defendants to their remedies at the trial, when the government's case is in." See also United States v Strand, supra, page 306; Freidus v United States, 223 F2d 598, Footnote 1, page 600 (CA DC Cir) (1955).

After verdict, the form of the initial charges need not be corrected by dismissing a duplicating count. Particularly an appellate tribunal need not take such action. Consequently, the appellate courts ordinarily direct only a reconsideration of the sentence, in instances where the form of the charges affects the sentence imposed upon the accused. Bell v United States, 349 US 81, 99 L ed 905, 75 S Ct 620; Prince v United States, 352 US 322, 1 L ed 2d 370, 77 S Ct 403; United States v Taylor, 6 USCMA 289, 20 CMR 5. As we pointed out in United States v McCormick, 3 USCMA 361, 12 CMR 117, under such circumstances "reconsideration of the sentence will cure any error resulting from any possible multiplication." See also Robinson v United States, 143 F2d 276 (CA 10th Cir) (1944). However, the appellate tribunal is not powerless to take more complete corrective action. It can, in the interest of justice, and in its sound discretion, do what the trial court can do, namely, dismiss the duplicating charges. This practice is not unknown in the Federal Courts of Appeals. For example, in Calvaresi v United States, 216 F2d 891 (CA 10th Cir) (1954), one of the defendants was tried and convicted on a multiple count indictment. On appeal he contended that counts 7 and 8 charged the same offense, and counts 15 and 16 were identical. The Government conceded the correctness of this contention. In acting on the case, the Court of Appeals held that "the *conviction* and sentence" on count 8 could not stand and that the "*judgment* imposed on count 16 must likewise fall." (Emphasis supplied.) Ibid, page 904. The Court then went on to say that the *verdict* and the *judgment* on those counts could not stand. The practice of setting aside a duplicating charge was regularly followed in the Navy before the Uniform Code. CMO 1–1948, page 37; CMO 2–1944, page 342.

Apart from the special rules of law applicable in this area, there is the general principle that an appellate tribunal can dismiss even a valid finding as part of its action in correcting errors at the trial and to insure justice to the accused. United States v McMahan, 6 USCMA 709, 723, 21 CMR 31; United States v Katzenberger, 8 USCMA 497, 24 CMR 307; United States v Thornton, 8 USCMA 57, 23 CMR 281. This general power is possessed by the boards of review. United States v Flemings, 8 USCMA 729, 25 CMR 233; United States v Williams, 8 USCMA 328, 24 CMR 138; United States v Katzenberger, supra.

In our opinion, therefore, the board of review did not abuse its discretion in dismissing the multiplicious charge. We answer the certified question in the affirmative.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

If this were an isolated case I would not be greatly concerned but the question certified in the instant case assumes importance because counsel for the Government states that thirty-five cases involving the issue have been considered by boards of review and there appears to be a difference in their application of the controlling principles of law.

As my commencement point, I would emphasize these facts. The accused was charged with desertion, in violation of Article 85, and missing movement through neglect, in contravention of Article 87, Uniform Code of Military Justice, 10 USC §§ 885 and 887, respectively. His unauthorized absence commenced on February 11, 1957, while the second alleged offense occurred on the following day. He pleaded guilty to absence without leave, a lesser included offense of desertion, and guilty to missing movement. The findings returned were in conformity with his guilty pleas, so that as the case reached the board of review there were no factual infirmities to undercut the findings.

Paragraph 74b(4) of the Manual for Courts-Martial, United States, 1951, page 116, provides as follows:

"*Offenses arising out of the same act or transaction.*—The accused may be found guilty of two or more offenses arising out of the same act or transaction, without regard to whether the offenses are separate. In this connection, however, see 76a(8)."

The reference to paragraph 76a(8), insofar as pertinent, has this to say:

"The maximum authorized punishment may be imposed for each of two or more separate offenses arising out of the same act or transaction. The test to be applied in determining whether the offenses of which the accused has been convicted are separate is this: The offenses are separate if each offense requires proof of an element not required to prove the other. . . . An accused may not be punished for both a principal offense and for an offense included therein because it would not be necessary in proving the included offense to prove any element not required to prove the principal offense."

Those two provisions have been before the Court on many occasions, and I believe we have fixed with certainty the rule that multiplicity *applies only to sentence* unless it can be said that in originally pleading the offenses there was an unnecessary multiplication of charges. A clear statement of the rule was made by Chief Judge Quinn in United States v McCormick, 3 USCMA 361, 12 CMR 117. In that opinion he stated:

"Finally, the accused contends that a charge of wilful disobedience of a lawful order, and one alleging misbehavior by cowardice arising out of a failure to obey the same order, results in an unreasonable multiplication of charges. While there are differences in the allegations of the two charges involved here and like charges contained in United States v Soukup, *supra*, we need not determine the question of multiplicity in this instance, for, as indicated in paragraph 76a (8), Manual for Courts-Martial, United States, 1951, the error of multiplicity relates only to the sentence. Since we have reversed the charge of misbehavior, that offense can support no part of the sentence; and reconsideration of the sentence will cure any error resulting from any possible multiplication in this instance."

From reading the board of review's opinion, it is fair to assume that it did not necessarily disagree with the rule spelled out above. Rather, it took the view that the accused should not be saddled with the commission of two offenses where only one offense has been

committed. Laying aside sentence for the moment, the difficulty with that approach is that the Code creates two offenses out of absence without leave and missing movement and a board of review exceeds its statutory authority when it refuses to follow the law. Certainly, a board of review cannot set aside a valid finding and sentence on the sole ground that a sailor with a good record should not carry the onus of a conviction. Other individuals or agencies connected with the military service make that determination. So far as I can ascertain, a board of review is a judicial appellate body which is only empowered to set aside findings if it concludes the evidence is insufficient to convince the members beyond a reasonable doubt that the accused is guilty, or if some error of law has been committed which impairs their validity. As to sentence, its power is limited to reducing the punishment to limits which it concludes are appropriate for the offense or offenses committed. In this instance, the board has performed its duties as to sentence, so we are only confronted with its actions in the findings and its dismissal of one offense.

I do not quite understand in what legal manner the board arrived at the conclusion that there was some infirmity in the findings which justified the order setting them aside. Any deficiency could not be factual as a plea of guilty was entered and it stands unchallenged. Therefore, the reason must find its root in an error of law. We are told by counsel for the appellee that the power to set aside findings for good reasons or no reason is implicit in Article 66(c) of the Code, which is as follows:

"In a case referred to it, the board of review may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses."

I do not believe the grant of power is as broad as appellee contends in his brief, for as I interpret the section, the board is an appellate agency and can act only with respect to the findings made by the convening authority. It should only affirm such findings as it finds correct in law and in fact and determines on the entire record should be affirmed. The board had to find that these findings were correct in law and in fact because under its view either finding could have been affirmed. Accordingly it must find authority for its decision in that part of the Article which states, "and determines, on the basis of the entire record, should be approved." The pivotal question thus becomes, what was the intent of Congress when it used that phrase? First, it is to be noted that the phrase is equally applicable to both findings and sentence, and we are sure that in dealing with findings, Congress intended the determination to be limited to evidentiary matters in the record which have some effect on the sufficiency or insufficiency of proof. While a board may weigh facts, it cannot go outside the record and an accused is not entitled to a hearing de novo. Certainly, Congress either intended to require boards of review to conform to the law as it applies generally to appellate agencies or it intended to permit them to act unhampered by legal rules. I am certain Congress intended the former and that construction is aided by the other parts of the Code which show the difference between the powers vested in a convening authority and those on boards of review. Article 64 of the Code, which clothes the convening authority with discretion, states:

"In acting on the findings and sentence of a court-martial, the convening authority may approve only such findings of guilty, and the sentence or such part or amount of the sentence, as he finds correct in law and fact and as he in his discretion determines should be approved. Unless he indicates otherwise, approval of

the sentence is approval of the findings and sentence."

It must be noted that in this Article Congress mentioned discretion while it did not do so in Article 66. Not having been given discretionary powers, the boards are limited by principles generally governing statutory appellate tribunals with the exception that they have been delegated the power to weigh evidence. As Judge Ferguson said in United States v Waymire, 9 USCMA 252, 26 CMR 32:

". . . Unlike a convening authority, who may disapprove findings of guilt for any reason, or for no reason at all, a board of review may only disapprove such findings as it finds incorrect in law and fact. United States v Massey, 5 USCMA 514, 18 CMR 138. It was never intended that a board of review be given the powers to disapprove findings in its 'discretion.' Cf. Article 64 of the Uniform Code, supra, 10 USC § 864. Not only does Article 66, supra, require that a board affirm findings of guilt which it determines to be correct in law and fact, but also that such determination be made 'on the basis of the entire record.' In United States v Whitman, 3 USCMA 179, 11 CMR 179, we said that it was error for a board of review to rely upon matter lying outside the record of trial in setting aside an otherwise valid conviction. It was held in that case that such action went well beyond the statutory limits established by the Code. Cf. United States v Burns, 2 USCMA 400, 9 CMR 30. In the instant case, there is no question but that the board of review, in setting aside the forgery conviction solely on the basis of 'substantial justice,' exceeded the scope of its authorized statutory functions."

One other statutory provision compels the conclusion I reach. Congress gave to The Judge Advocates General the right to forward cases to this Court for purposes of review. Implicit within that grant is the authority for us to consider any errors of law committed by the boards of review against either party. That authority would be rendered absolutely worthless to the Government if they could reverse any case on discretionary grounds. I point out that a convening authority could reverse a conviction for any reason— whimsical or not—and the Government would have no means to reach any abuse of discretion. But Congress took pains to make it possible for the Government to reach errors of law if they occurred at the board of review level, and I am not disposed to interpret the Code to restrict our right to consider them. If a board of review makes an error of law or acts arbitrarily or capriciously, we have the duty to correct the error.

One further matter bears consideration. Of course, a board of review has the power to determine whether the Government unreasonably multiplies charges against an accused. If that is the basis of the present decision, then we are faced with a proposition of law and have the authority to review the ruling. Under the facts of this case, a decision based on that principle is erroneous as a matter of law. The test to determine unreasonableness in pleading must be made in relation to conditions as they exist at the time the charges are prepared. The law states that one transaction may be made the basis for more than one specification, and it is proper pleading to allege one unlawful transaction in two separate charges, particularly when it violates two separate provisions of the Code. As previously stated, the accused violated both Articles 86 and 87 of the Code, 10 USC §§ 886 and 887, and his burden of defense is not complicated one bit by charging the violations in two different ways. There can be no question about his guilt of either or both of the alleged offenses. This is not contrary to our holding in United States v Posnick, 8 USCMA 201, 24 CMR 11, for we did not decide that an accused could not be found guilty of two crimes if his conduct violated two separate Articles of the Code. What was said on that facet of the case was this: "It is settled that the legal fact of multiplicity of charges is only significant in

consideration of maximum authorized punishment." It would require us to distort the meaning of the word unreasonable to apply it to the pleader in this case in the light of that statement. Furthermore, we have been faced with countless records where one offense has been alleged in two different ways and we have always taken it for granted that the charges were not unreasonably multiplied.

Still another argument is available to show that it was not unreasonable to charge this accused with two offenses. Depending on the facts—which we do not know because of the plea—the accused could have been found not guilty on both specifications, or guilty on both, or not guilty on one and guilty on the other. Two sections of the Code were alleged to have been violated on different dates and intervening facts would have made any of those findings possible. Certainly, at the time the charges were drawn, it was not unreasonable to plead two offenses to cover the contingencies of proof. That is standard practice and employed in most courts. For example in the recent case of United States v Williams, 9 USCMA 400, 26 CMR 180, the accused pleaded guilty to unauthorized absence from his place of duty and breach of arrest. Although both offenses were alleged to have occurred on the same day, we refused to accept his claim of multiplicity as his unauthorized departure from his place of duty did not necessarily prove the unauthorized departure from the area of arrest.

In the very recent case of United States v Walker, 8 USCMA 640, 25 CMR 144, we were faced with a situation involving multiplicity because of pleading a greater and lesser offense in two separate specifications. We held there was only one offense but we did not set aside the findings. We sent the case back to a board of review for reassessment of sentence on the greater offense. While it can be argued that one case does not set a pattern, our reports contain many cases which have been reversed because the specifications were multiplicious but in no instance have we set aside a finding that was not affected by some other infirmity. That has been done because of our interpretation of the law that one act may be the basis of more than one specification and in the absence of some other factor it is not unreasonable to comply with that law.

In summation, appellate jurisdiction is the authority of a superior tribunal to review and to reverse, correct or affirm, the decision of an inferior court. To reverse there must be error. The board's reversal must be charged to a belief by a majority of its members that the present law is unfair. Without debating that proposition I merely say that our duty is to enforce the law as we find it. In this instance I find no legal or factual basis for the board of review to dismiss the offense to which a plea of guilty has been entered.

I answer the certified question in the negative. I would reverse the decision of the board of review.