UNITED STATES, Appellee,

v.

**Private First Class Ronald W. FISHEL, SSN 234–98–5518, United States Army, Appellant.**

**CM 440080.**

U. S. Army Court of Military Review.

30 Oct. 1981.

---

Captain Courtney B. Wheeler, JAGC, and Major Jerome E. Kelly, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major Ted B. Borek, JAGC, Major Paul G. Thomson, JAGC, and Captain Glenn D. Gillett, JAGC, were on the pleadings for appellee.

Before FULTON, McKAY and COHEN Appellate Military Judges.

## OPINION OF THE COURT

FULTON, Senior Judge:

Appellant's conviction and sentencing on pleas of guilty has occasioned, on appeal, assignments of error pertaining to the adequacy of the military judge's inquiry into the providence of the guilty pleas as to several of the offenses and a request that two specifications be dismissed because they are multiplicious with others. Each assignment of error is without merit. We affirm.

On the evening of 15 December 1979, appellant and several friends went hunting at Hunter Army Airfield, Georgia. They took with them in the automobile appellant's sawed-off shotgun, his .303-caliber rifle, and his .22-caliber rimfire rifle. At about 2230 hours, appellant shot and killed a female deer, using the .22-caliber rifle and aided by an Army issue, 2-cell flashlight.

On another occasion, 4 February 1980, appellant was in his barracks room preparing to transfer some marihuana to another person. Military policemen entered the room to seize the marihuana, whereupon appellant threw the marihuana out the window.

Those events gave rise to the specifications listed below. The appellant pleaded guilty to each of them:

a. Possessing a prohibited item, namely a shotgun having a barrel less than 18 inches long, in violation of post regulations and Article 92 of the Uniform Code of Military Justice, 10 U.S.C. § 892 (1976) (Specification 1 of Charge I);[1]

b. Carrying firearms (the .303 and .22 caliber rifles) in a manner and at a location not authorized by the post regulations, in violation of Article 92, *supra* (Specification 2 of Charge I);

c. Wrongfully shooting "a deer at night with the aid of an artificial light," contrary to section 45–502 of the Georgia Code, assimilated under section 13 of title 18, United States Code, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1976) (Specification 1 of Charge II);

d. "[W]rongfully hunt[ing] deer with a .22 caliber rimfire rifle" contrary to section 45–503 of the Georgia Code, also in violation of Article 134 of the Uniform Code under the Assimilative Crimes Act (Specification 2 of Charge II);[2]

e. Wrongful possession of marihuana "with intent to distribute," in violation of Article 134, *supra* (Specification 1 of Additional Charge I); and

f. Wrongfully removing property to prevent its seizure, by throwing the marihuana out the window before it could be properly seized, contrary to section 2232 of title 18, United States Code, in violation of Article 134, *supra* (Specification 2, Additional Charge I).[3]

On appellant's pleas of guilty, the military judge sentenced him to a bad-conduct discharge, confinement at hard labor for two months, forfeiture of $200.00 pay per month for two months, and reduction to the grade of Private E–1. Pursuant to the plea bargain, the convening authority reduced the term of confinement from 2 months to 40 days, but approved the sentence otherwise.

---

1. The regulation was described as "24th Infantry Division and Fort Stewart Regulation 190–2." The guilty plea admits its geographical applicability to Hunter Army Airfield, which is not contested. Evidently the military judge had a copy before him, for he appears to have read from it, but the failure of counsel to introduce a copy as an exhibit limits our ability to review questions of interpretation which might arise.

2. No copy of the Georgia statutes was included with the record forwarded to this Court, although it is evident that the military judge had been provided with a copy.

3. Section 2232 of title 18, United States Code (1976), provides as follows:

   Whoever, before, during, or after seizure of any property by any person authorized to make searches and seizures, in order to prevent the seizure or securing of any goods, wares, or merchandise by such person, staves, breaks, throws overboard, destroys, or removes the same, shall be fined not more than $2,000 or imprisoned not more than one year, or both.

## I

The first assignment of error we shall discuss is the appellant's assertion that we should order a rehearing as to Specification 1 of Charge II (shooting the deer at night) because the military judge incorrectly explained the elements of that offense. Perhaps the judge did err, but we find that appellant's plea of guilty was nonetheless provident.

The Georgia statute involved, cited to us by appellate counsel, provides as follows:

45–502 Hunting hours

(a) It shall be unlawful to hunt at night any game bird or game animal in this State except for raccoons, opossums, foxes and bobcats and these may not be hunted with lights, except that a light which does not exceed six volts or a fuel type lantern may be carried by hand by a hunter or worn on the hunter's belt and used for locating such animals.

. . . .

To convict an accused of violating this statute, it seems necessary only to show that he hunted a deer (or other game animal not among those listed as exceptions) at night, and not that he necessarily used a light of any description to do so. Nevertheless, the specification alleged that appellant "did . . . wrongfully shoot a deer at night with the aid of artificial light." The judge and both counsel evidently assumed that the use of a light was an element of the offense, and the judge's plea inquiry mentioned it on several occasions. Appellant informed the judge that he had shot a small doe at about 2230 hours on the date charged and that, in so doing, he used a two-cell military flashlight to "jacklight" or freeze the deer in position by temporarily blinding it. The judge seems also to have assumed that the light used must have exceeded six volts.[4]

Whether the allegation concerning the use of a light be regarded as an element of the offense, only a circumstance in aggravation, or mere surplusage, we perceive no prejudice to the appellant. He voluntarily entered a counselled plea of guilty to a specification that included that particular allegation and its factual basis was established by his own description of the event.[5] The allegation did not authorize a greater punishment, nor, we find, did it result in greater punishment.

## II

Two further assignments of error relate to the military judge's inquiry into the providence of the pleas of guilty to the specifications of the Additional Charge (the offenses involving marihuana).

Appellant succinctly described the events as follows:

Around eight o'clock [at night] I came back from a bar . . . I had a small amount of marihuana in my room and I met a dude to borrow—that wanted some—so I told him to come up to the room and I'd give him some. And he came up to the room and I was getting ready to give him some when the MPI [military police investigators] busted in. As they busted in I threw it out the window to keep from getting caught with it.

In response to further questions, appellant reiterated that he threw the marihuana for the purpose of preventing its seizure and that he was satisfied that the military policemen who entered the room to seize the marihuana had the authority to do so.

As to Specification 1, possessing marihuana wrongfully with the intent to distribute it, the asserted error is that the military

---

4. However, appellant's description of the flashlight suggested that it was a light of less than six volts, which, as the statute indicates, may be used for locating animals of the type that lawfully may be hunted at night. Examination of the allied papers reveals that it was in fact a typical L-shaped Army flashlight of the type powered by two one-and-one-half volt, size D batteries.

5. When appellant indicated that he might be confused as to the elements, he and his counsel conferred at some length, after which appellant stated that he understood the military judge's explanation. Record at 26–27.

judge failed to establish a factual basis for the required element that the conduct be prejudicial to good order and discipline in the armed forces or of a nature to bring discredit upon the armed forces.

These stereotyped contentions are without merit. The military judge listed each element of the offense. Appellant said that he understood them all, and that he had no questions concerning them. He agreed that they correctly described his conduct. The terms used are common terms and require no specific definition in the absence of some indication that an accused does not understand them. At the trial, appellant professed understanding; he does not deny it now. The circumstances described by the appellant clearly indicate conduct to the prejudice of good order and discipline. Thus, the criteria for a provident plea were met. *See United States v. Davenport*, 9 M.J. 364, 367 (C.M.A.1980); *United States v. Arrington*, 5 M.J. 756, 758 (A.C.M.R. 1978).

■ As to Specification 2, wrongful removal of property to prevent its seizure, appellant asserts that an essential element of the offense is knowledge of the existence of an outstanding warrant or knowledge of an ongoing hot pursuit, and that the military judge failed to explain this element or elicit a factual basis for its existence.

Appellant's reliance on *United States v. Gibbons*, 331 F.Supp. 970 (D.Del.1971), *aff'd*, 463 F.2d 1201 (3d Cir. 1972), in support of his argument is misplaced. The District Court was in that case discussing the potential application of section 2232 to a removal of property prior to any seizure. In this case, the removal was during the seizure. In any event, as the District Court noted, the essential question is one of intent whether the removal occurs before any attempted seizure or during it. Here, appellant admitted knowing that a lawful seizure was in progress and having the intent to prevent it.

### III

Appellant's assertions of multiplicity are based on his view that possession of the prohibited shotgun and carrying the rifles on post not for an authorized purpose were but a single violation for purposes of punishment, that hunting deer at night and hunting it with an unlawful weapon also were not separately punishable, and that wrongful possession of marihuana and removal of it to avoid seizure likewise merged for punishment purposes.

He raised this issue early in the proceedings, never seeking dismissal of any of the specifications, but merely asserting that they merged for punishment purposes, as indicated above. The military judge postponed consideration of the matter until the sentencing portion of the trial.

When the time for sentencing arrived, the trial counsel, for reasons not stated, acceded to the defense counsel's calculation of the maximum punishment, whereupon the military judge said:

> [I]f you all agree, I'll just make that the max[imum], whether or not they are in fact multiplicious need not even be gone into since you concur. That sets the maximum punishment that could be adjudged as—the total maximum punishment is a dishonorable discharge, confinement at hard labor for eight years, total forfeitures, and reduction to Private E1. Okay? That's what I'll consider.

Appellate defense counsel have not asserted that the regulatory violations were multiplicious and have renewed only the contentions that the hunting violations merged for punishment and the marihuana offenses merged for punishment. The remedy sought is dismissal of one of each of the two related specifications involved.

> The Court of Military Appeals has said—
> As paragraph 76a(8) [now 76a(5)], Manual for Courts-Martial, supra, implies, there is no error committed until the charges are unreasonably multiplied or unless the court-martial could have considered both allegations when arriving at punishment for what is in reality one offense.

*United States v. Posnick*, 8 U.S.C.M.A. 201, 205, 24 C.M.R. 11, 15 (1957) (holding, 2–1, that special court-martial members should

have been instructed that certain offenses were not separately punishable) (citations omitted).

Assuming for the purpose of discussion that the hunting offenses and the offenses related to possession of marihuana each arose from substantially one "transaction" within the meaning of paragraph 26*b*, Manual for Courts-Martial, United States, 1969 (Revised edition)—a conclusion with which we do not necessarily agree—we nevertheless conclude that appellant is not entitled to dismissal of the assertedly multiplicious specifications.

First, we do not consider any assumed multiplication of charges in this case to have been unreasonable. As between each of the two specifications claimed to have been multiplicious, the elements, intent, and interests sought to be protected were sufficiently different that we believed there was no exaggeration of charges. *Compare United States v. White*, 40 C.M.R. 686 (A.B. R.1969), *with United States v. Peak*, 44 C.M.R. 658 (C.G.C.M.R.1971). Second, the military judge's lowering of the maximum authorized punishment to that urged by the defense counsel eliminated any possibility of error in regard to the yardstick used.[6] Third, the lack of any emphasis by counsel during the sentencing proceedings as to the number of offenses, the lenity of the military judge, and the further reduction of the sentence pursuant to the plea bargain are sufficient to convince us that appellant is not laboring under a more severe sentence than otherwise would be the case. *Compare United States v. Gibson*, 11 M.J. 435 (C.M.A.1981), *with United States v. Holsworth*, 7 M.J. 184 (C.M.A.1979).

As the Court of Military Appeals also has observed—

> After verdict, the form of the initial charges need not be corrected by dismissing a duplicating count. Particularly an appellate tribunal need not take such action. Consequently, the appellate courts

ordinarily direct only a reconsideration of the sentence, in instances where the form of the charges affects the sentence imposed upon the accused.

*United States v. Drexler*, 9 U.S.C.M.A. 405, 408, 26 C.M.R. 185, 188 (1958) (2–11). While the *Drexler* court further pointed out, however, that "an appellate tribunal can dismiss even a valid finding as part of its action in correcting errors at the trial and to insure justice to the accused," *id.* at 408, 26 C.M.R. at 188, the appellant in this case has pointed to no error and no injustice. His only argument is to the effect that a multiplication of charges may create the impression that an accused is a "bad character" and lead a court to resolve against him any evidentiary doubts. *See United States v. Haywood*, 6 M.J. 604 (A.C.M.R.1978), *pet. denied*, 7 M.J. 158 (C.M.A.1979). Here, there were no evidentiary doubts because the appellant pleaded guilty. Under such circumstances, we will not disturb the findings. *Cf. United States v. Sweney*, 48 C.M.R. 476, 480 (A.C.M.R.), *pet. denied*, 48 C.M.R. 1000 (C.M.A.1974).

## IV

We have considered appellant's separate argument that the inclusion of a bad-conduct discharge renders his sentence inappropriately severe, and we find it singularly unpersuasive.

The findings of guilty and the sentence are affirmed.

Judge COHEN concurs.

Judge McKAY concurs in the result.

---

**6.** The providence of the guilty pleas was not thereby affected because appellant's offer to plead guilty was expressly made independent of "any ruling by the Military Judge or the appellate courts" on the question of multiplicity.