UNITED STATES

v.

**Sergeant Carl E. GILL, FR354–64–6496 United States Air Force.**

**ACM 29103.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 6 June 1990.

Decided 19 March 1993.

502

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens and Major Ronald A. Gregory.

Appellate Counsel for the United States: Colonel William R. Dugan Jr., Lieutenant Colonel Brenda J. Hollis, Major Ann M. Mittermeyer, Major Paul H. Blackwell, Jr., and Major Jeffrey C. Lindquist.

Before LEONARD, JAMES, and JOHNSON, Appellate Military Judges.

## OPINION OF THE COURT

JOHNSON, Judge:

Sergeant Gill was charged with assault consummated by a battery on a child under the age of 16, assault in which grievous bodily harm was intentionally inflicted, and unpremeditated murder.[1] The victim was his infant daughter, who died at the age of 4 months. A general court-martial, composed of members, found Sergeant Gill not guilty of murder but guilty of assault consummated by a battery on a child under the age of 16 and of two specifications of aggravated assault with a means likely to cause grievous bodily harm. Sergeant Gill argues a number of issues before us, one of which warrants relief. We set aside one of the three findings of guilty, and reassess the sentence.

Carla Gill was born 15 August 1989 while Sergeant Gill was assigned at Bitburg Air Base, Germany. On 19 September 1989, she was treated by an Air Force physician for subconjunctival hemorrhages (bleeding under the superficial layer of the white part of the eye). The physician testified this condition is rare in newborn infants and is often caused by child abuse. One cause of this condition is squeezing or pressing the child's chest, which increases blood pressure to the extent that small blood vessels rupture. Shaking the child

---

**1.** Articles 128 and 118, UCMJ; MCM, Part IV, paragraphs 54 and 43 (1984).

can also cause this condition, as can bleeding disorders, direct trauma to the eyes, or perhaps violent crying. Neither medical authorities nor agents of the Air Force Office of Special Investigations (OSI) could determine the cause of Carla Gill's condition, so no official action was taken.

On 13 December 1989, Carla Gill died. An autopsy revealed her ribs had been fractured in 13 places, and were partially healed. A radiologist estimated the fractures were 2 to 6 weeks old. The fractures were of different ages, and some showed evidence of re-injury during the healing process. There were fresh hemorrhages on the surface of the child's heart, which a physician testified were unlikely to have been caused by resuscitation efforts by rescue unit or medical personnel. There was a bruise on the top of her head and another over her ribs on the left side of her body. The cause and manner of death were not officially determined, although the autopsy findings were suggestive of asphyxiation.

Sergeant Gill gave a written statement to OSI investigators on the day Carla died in which he admitted he had on five previous occasions squeezed his daughter's chest in order to stop her from crying. He also admitted to striking her on the head with his knuckles several days earlier, for the same purpose. He said he squeezed her around her chest and neck to quiet her on the day she died, and then put her to bed with a pillow over her head to muffle her cries when she woke. When he checked on her about 4 hours later, she was unconscious and could not be revived. In a second statement, 2 days later, he admitted he knew his actions could cause his daughter's death, but he maintained he did not intend that she die.

## I. ADMISSIBILITY OF ADMISSIONS

### A. VOLUNTARINESS

■ Sergeant Gill argues the military judge erred in denying a defense motion to suppress his statements to the OSI on the basis that they were involuntary. There is no issue in this case concerning the adequacy of the warnings of rights given or of the validity of Sergeant Gill's waiver of his rights. The argument is that, considering the totality of the circumstances, the statements were involuntary. The defense presented testimony from Sergeant Gill's spouse, coworkers, supervisors, and mental health professionals that he is quiet, compliant, cooperative, and eager to avoid conflict. A psychologist who has extensive experience concerning interrogations of criminal suspects testified he administered standardized tests to Sergeant Gill which indicated he was unusually compliant to authority and highly susceptible to suggestion when he was under pressure.

There is no doubt Sergeant Gill was under emotional stress resulting from the death of his daughter when he gave his first statement to the OSI on the evening of the day Carla died. He was also distressed that his wife had decided to leave with their two other children for the United States. Both Sergeant Gill and his wife testified he had not slept well for several nights and that he had only a few hour's sleep the night before Carla's death. Sergeant Gill testified he was exhausted and scared when he was interviewed by OSI agents. Witnesses who were with Sergeant Gill before and after the interview had differing opinions as to how well he was functioning. The two OSI agents who conducted the interview testified he was lucid and alert. The interview began during Sergeant Gill's normal duty hours. It lasted about 5 hours, the last 3 hours of which were spent in preparing a written statement.

Sergeant Gill's testimony and that of the two OSI agents were in sharp conflict as to whether the interrogators made up the story they wanted to hear and persuaded Sergeant Gill to agree to it, the extent to which they appealed to his religious convictions, whether his demonstration of squeezing and choking Carla was the product of coaching by the interrogators, and whether the written statement accurately reflected his oral statements. Similar issues of fact arose concerning Sergeant Gill's second statement given to the OSI 2 days later, after an autopsy had revealed additional injuries.

 The legal principles by which the admissibility of Sergeant Gill's admissions must be tested are well settled. The Fifth Amendment right against self-incrimination requires that confessions be excluded from evidence in criminal trials unless they were made voluntarily, considering the totality of the circumstances surrounding the confession. *Arizona v. Fulminante*, 499 U.S. 279, ——–——, 111 S.Ct. 1246, 1251–52, 113 L.Ed.2d 302 (1991); *United States v. Lonetree*, 35 M.J. 396 (C.M.A.1992). This voluntariness test is incorporated into military law in Article 31(d), UCMJ, 10 U.S.C. § 831(d), which excludes from evidence any admission of the accused obtained "through the use of coercion, unlawful influence, or unlawful inducement." The burden of proof is on the prosecution to show by a preponderance of the evidence that the admission was made voluntarily. Mil.R.Evid. 304(e).

 The circumstances to be considered in weighing voluntariness include the physical and emotional condition of the suspect; his intelligence, education, and prior experience; whether he was properly advised of his rights; whether he was deprived of rest or food for an extended period; whether the questioning was repeated and prolonged; and whether threats, promises, or other coercive techniques were employed by the interrogators. A weak personality does not automatically render a statement involuntary. *United States v. Robinson*, 26 M.J. 361 (C.M.A. 1988), *cert. denied*, 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989). Appeals to the religious beliefs of a suspect are not *per se* coercive but must be considered as part of the totality of the circumstances. *United States v. Wheeler*, 22 M.J. 76 (C.M.A.1986), *cert. denied*, 479 U.S. 827, 107 S.Ct. 106, 93 L.Ed.2d 55 (1986).

The military judge made detailed written findings of fact, on the basis of which he found Sergeant Gill's statements to have been voluntary. After careful consideration of the evidence we adopt the military judge's findings as our own. We conclude Sergeant Gill's statements were voluntary, and they were properly admitted in evidence.

## B. MATTERS OUTSIDE THE RECORD

 In his findings concerning the motion to suppress Sergeant Gill's admissions, the military judge commented that the questions on a test administered by a psychologist were "rather transparent." During an Article 39(a), 10 U.S.C. § 839(a) session at a later point in the trial, while discussing the permissible scope of cross-examination of the same psychologist before the members, the judge commented:

It strikes me that in all the expert testimony I've ever heard on the subject of personality traits, that once they are established, certainly by the time of early adolescence, they remain fairly well fixed throughout a person's lifetime.

Sergeant Gill now argues these remarks show the military judge used expert testimony from other cases to evaluate the psychologist's testimony, which he asserts is a violation of his Sixth Amendment right to confrontation. He cites no authority for this proposition.

R.C.M. 902 provides that a military judge should disqualify himself where he has "personal knowledge of disputed evidentiary facts concerning the proceeding." Most of the cases applying this principle involve prior knowledge by the judge concerning the accused or the facts of the case. *See e.g., United States v. Winter*, 35 M.J. 93 (C.M.A.1992); *United States v. Soriano*, 20 M.J. 337 (C.M.A.1985); *United States v. Bradley*, 7 M.J. 332 (C.M.A.1979); *United States v. Head*, 2 M.J. 131 (C.M.A.1977). In one case the Navy Court of Military Review concluded a military judge should have considered recusing himself where he believed himself to be an expert witness on the subject of the aviation reserve organization. *United States v. Duvall*, 7 M.J. 832 (N.C.M.R.1979). In another case, where the military judge, sitting alone, was a certified documents examiner, the Court of Military Appeals concluded he should have recused himself from presiding at a court-martial where the making by the accused of certain bad checks was in issue

and "he had to consider his own expertise as a documents examiner in arriving at the verdict in this case." *United States v. Conley,* 4 M.J. 327 (C.M.A.1978).

There is no such issue in this case. The first comment of the military judge relied upon by Sergeant Gill makes reference to no outside information or expertise. When asked what kind of questions made up his "compliance self-assessment," the psychologist gave the following examples: "I am eager to please. I give easily in to pressure. I believe in avoiding rather than confronting demanding situations. I always do as I am told. I would agree with people, even though what they are telling me is wrong, just to get out of the situation." No expertise of any kind is required in order to find, as the military judge did, that the import of these questions is rather transparent.[2]

In the second comment complained of, the military judge specifically mentioned having heard testimony from mental health experts in other cases to the effect that personality traits persist over time. In the circumstances of this case, we conclude the military judge's consideration of that proposition was not improper. It is a matter within the general experience and common sense of every adult person and requires no special expertise. It was specifically disclosed on the record to the parties, and no objection was made to its consideration. The military judge invited the defense counsel to present contrary evidence if he felt the proposition was inaccurate. Defense counsel never did so, and in fact the defense case was in part based on this same proposition; the defense psychologist's testimony was largely based on personality testing conducted 6 months after the charged offenses. The military judge's statement was not made before the members, and it related only to the procedural issue of the permissible scope of cross-examination of an expert, which is a matter entrusted to the discretion of the military judge. Mil.R.Evid. 705. No suggestion was made at trial that the military judge

should recuse himself. We conclude, in these circumstances, Sergeant Gill was not denied his right to confront the witnesses against him, and the military judge was not required to recuse himself.

## II. DUE PROCESS ISSUES FROM AUTOPSY

Sergeant Gill argues next that he was denied due process of law because the government failed to preserve potentially exculpatory evidence for laboratory analysis and because it failed to follow its own regulations for autopsy procedures.

## A. FAILURE TO PRESERVE EVIDENCE

■ During the autopsy of Carla Gill conducted at the Air Force regional medical center at Wiesbaden, Germany, samples of her blood and stomach contents were collected. These samples were tested for alcohol and illicit drugs, which were not found to be present. No testing for other poisons was conducted. The samples were either consumed in testing or discarded. Soon afterwards Carla's body was embalmed, after which it was no longer possible to obtain fluid or tissue samples for toxicology testing. Sergeant Gill now argues he was deprived of due process of law because the failure of the government to retain fluid samples for further toxicology testing deprived him of the potential ability to prove Carla died from accidental poisoning, and not from asphyxiation due to his acts. This argument fails for two reasons.

■ First, the law is well settled that an appellant is entitled to no relief on due process grounds because of the failure of the government to preserve evidence unless (1) the evidence possesses an exculpatory value that was apparent before it was destroyed, (2) it is of such a nature that the accused would be unable to obtain comparable evidence by other reasonably available means, and (3) the government destroyed the evidence in bad faith. *California v. Trombetta,* 467 U.S. 479, 488–89, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984);

---

**2.** The psychologist himself, in later testimony before the members, conceded that some of the questions on this questionnaire were "transparent".

*Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *United States v. Garries,* 22 M.J. 288, 292–93 (C.M.A.1986), *cert. denied,* 479 U.S. 985, 107 S.Ct. 575, 93 L.Ed.2d 578 (1986); *United States v. Kern,* 22 M.J. 49 (C.M.A.1986); *United States v. Anderson,* 36 M.J. 963 (A.F.C.M.R.1993); *United States v. Mobley,* 28 M.J. 1024, 1028 (A.F.C.M.R.1989), *aff'd,* 31 M.J. 273 (C.M.A.1990). In this case the exculpatory value of the evidence may have been apparent before it was destroyed, and the accused is unable to obtain comparable evidence by other means, but the defense concedes there was no bad faith on the part of the government. The autopsy fluid samples were consumed or discarded in accordance with routine medical laboratory practice, and Carla's body was embalmed at the request of her family.

Second, this evidence relates only to the issue of the cause of Carla Gill's death. The members found Sergeant Gill not guilty of causing her death, and found him guilty only of the lesser included offense of assault with a means likely to cause grievous bodily harm. At that point, the issue of the cause of Carla's death became moot. *See Anderson.*

### B. FAILURE TO FOLLOW REGULATIONS

 Sergeant Gill also argues the military judge erred when he denied a defense motion to dismiss the unpremeditated murder charge on the basis that the government failed to follow its own regulations for the conduct of "medicolegal" autopsies.[3] In particular, the defense argues the government failed to follow Air Force Manual 160–19, *Autopsy Manual,* April 1981, and DOD Directive 6010.16, *Armed Forces Medical Examiner System,* March 8, 1988, by failing to thoroughly examine body fluids and tissues for drug and toxic substances, and by failing to follow certain chain of custody procedures.

This argument fails for two reasons. First, it became moot when the members found Sergeant Gill not guilty of causing Carla's death. *See Anderson.* Second, the military judge correctly ruled that these directives were not intended to create any substantial legal right in any individual. They are not intended to protect individual liberties or interests as in *United States v. Arguello,* 29 M.J. 198 (C.M.A.1989) (failure to follow Department of Defense directive establishing urinalysis program for detection of drug abuse)[4] and *United States v. Russo,* 1 M.J. 134 (C.M.A.1975) (enlistment void for recruiter misconduct in providing reading test answers to prospective enlistee who could not read). Accordingly, an appellant is not entitled to relief even if a deviation is shown.

### III. AUTOPSY PHOTOGRAPHS

 Sergeant Gill next argues the military judge erred to his prejudice by admitting into evidence three color photographs taken at the victim's autopsy. One depicts the victim's side with the skin peeled back to show a bruise over her ribs. The other two photographs show broken ribs on her left and right sides. The defense objected to this evidence at trial under Mil.R.Evid. 403, which provides that otherwise admissible evidence should be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice" or other stated considerations.

 Photographs of injuries or the bodies of deceased victims are often gruesome. The military judge must carefully weigh the probative value of such evidence against its potential for prejudicing the accused by arousing strong emotions in the court members. *United States v. Yanke,* 23 M.J. 144 (C.M.A.1987) (black and white photograph of infant suffocation victim admissible on sentencing); *United States v.*

---

**3.** The pathologist who performed the autopsy testified he did not regard the case as a homicide at the time of the autopsy, so he believed the requirements for a "medicolegal" autopsy were not applicable. The OSI regional forensic consultant who was present at the autopsy referred to it as "just one more medicolegal autopsy." We assume, without deciding, that the regulation applied.

**4.** *Cf. United States v. Pollard,* 27 M.J. 376 (C.M.A.1989).

*Redmond,* 21 M.J. 319 (C.M.A.1986), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1950, 90 L.Ed.2d 359 (1986) (homicide victim's skull admissible on findings to show degree of force used); *United States v. Combs,* 35 M.J. 820 (A.F.C.M.R.1992) (photographs of child abuse victims admissible to "reduce the case from an amorphous victim to a specific victim"); *United States v. Nixon,* 30 M.J. 501 (A.F.C.M.R.1989), *pet. denied,* 31 M.J. 435 (C.M.A.1990) (photographs of victim's injuries admissible to show the degree of force required, to negate claim of accident); *United States v. Mobley,* 28 M.J. 1024 (A.F.C.M.R.1989), *set aside on other grounds,* 31 M.J. 273 (C.M.A.1990) (autopsy photograph of opened neck cavity of strangulation victim admissible to show the degree of force required; photographs of victim's exposed skull with surgically reflected scalp pulled forward over her face were not admissible; court member fainted). The standard for our review is whether the military judge abused his discretion in admitting the photographs in question. *Yanke,* 23 M.J. at 145.

The trial counsel in this case originally announced he intended to offer nine autopsy photographs. After preliminary discussion of the photographs and the applicable law among the military judge and counsel in an Article 39(a) session, the trial counsel offered five photographs into evidence. Counsel and the military judge examined the exhibits and elicited from the medical examiner a detailed explanation of how each photograph would help the members to better understand the victim's injuries and their likely cause. The military judge then admitted three of the photographs and excluded two others.[5] Two of the three admitted photographs were never shown to the members. The military judge also ordered the partial masking of the one photograph shown to the members to obscure an unsightly umbilical hernia unrelated to the charged offenses. This procedure was well tailored to produce a careful and informed balancing of the probative value of the evidence against its potential inflammatory effect. We find the military judge's balancing of these competing interests appropriate and we conclude there was no abuse of discretion in admitting these three exhibits.

## IV. MULTIPLICITY

■ Sergeant Gill next argues two of the specifications of which he was convicted were multiplicious for both findings and sentencing. We agree, and we will reassess the sentence as a result.

The original charges in this case may be summarized as follows:

Charge I: Article 118. Unpremeditated murder of Carla Gill on or about 13 December 1989 by asphyxiating her.

Charge II: Article 128.

Specification 1. Aggravated assault on Carla Gill on divers occasions between on or about 15 August 1989 and on or about 13 December 1989 by squeezing her in her torso, thereby intentionally inflicting grievous bodily harm upon her, to wit: fractured ribs.

Specification 2. Assault consummated by a battery on Carla Gill, a child under the age of 16 years, on or about 11 December 1989 by striking her on the head with his knuckle.

There is no argument before us that these original charges were multiplicious. The issue arose when the members made their findings as to the first two specifications by exceptions and substitutions.

---

5. One of the admitted photographs showed the victim's rib cage with the overlying tissue reflected, revealing a bruise over the ribs. The medical examiner testified this exhibit would help him explain that the location of the bruise made it unlikely it was caused by resuscitation efforts. This photograph was projected in slide form during the medical examiner's testimony before the members. The other two admitted photographs were of sections of the victim's rib cage after removal from her body. The medical examiner testified these exhibits would help the members understand the location and partially healed condition of the various rib fractures found during the autopsy. Ultimately, at the election of the prosecutor, these two photographs were never shown to the members. The military judge ruled a photograph of hemorrhage on the victim's heart, and of the victim's scalp reflected to show a bruise on the top of her head, were of insufficient probative value to warrant admission into evidence.

Their findings of guilt may be summarized as follows:

Charge I: Article 128. Aggravated assault on Carla Gill on 13 December 1989 with a means likely to produce death or grievous bodily harm, to wit: his hands.
Charge II: Article 128.
Specification 1. Aggravated assault on Carla Gill on divers occasions between on or about 15 August 1989 and on or about 13 December 1989 with a means likely to produce death or grievous bodily harm, to wit: his hands.
Specification 2. Assault consummated by a battery on Carla Gill, a child under the age of 16 years, on or about 11 December 1989 by striking her on the head with his knuckle.

It may readily be seen that the members' findings raise an issue of multiplicity that did not exist with respect to the original charges. Stated simply, the issue is whether the two findings of guilty of aggravated assault merged into one offense for findings and sentencing purposes. We conclude they did.

The issue was identified at trial. The defense counsel argued the two aggravated assault findings merged because they described the same type of conduct and because the date of the offense in Charge I and its specification was included within the period charged as "divers acts" in Specification 1 of Charge II. The trial counsel argued the members must have found the events of 13 December 1989 to be separate and distinct from other aggravated assaults during the charged period. The military judge declined to find the offenses multiplicious. He offered to ask the members if they had found separate offenses, but neither counsel asked that he do so and he did not. In a later discussion with counsel on sentencing instructions, the military judge suggested that he instruct the mem-

bers the maximum sentence would be reduced from 8 years to 5 years if they had convicted Sergeant Gill twice of the same act.[6] The defense counsel objected on the basis the military judge should rule on multiplicity and not invite the members to resolve it during their sentencing deliberations. No instruction on multiplicity was given.

The convening authority later returned the record of trial to the court-martial and directed that it reconvene so the military judge could seek clarification from the members of "a possible ambiguity in their findings regarding Charge I and its Specification and Specification 1 of Charge II." The military judge chose to resolve the ambiguity by submitting special interrogatories to the members. Their answers made it clear that the members found Sergeant Gill had committed more than one aggravated assault upon Carla on 13 December 1989, but that all the acts of aggravated assault, including the one described in their finding as to Charge I, were included in their finding as to Specification 1 of Charge II.

The military judge was not directed by the convening authority to take any action on the charges on the basis of this information, and he took none. The staff judge advocate advised the convening authority that the findings were not multiplicious because the members expressly found there were two separate aggravated assaults by Sergeant Gill on Carla on 13 December 1989.[7] The convening authority took no action on the findings. He approved the sentence as adjudged, which included confinement for 8 years.

Rules against the unfair multiplication of charges are a long-standing feature of

**6.** The maximum sentence for aggravated assault includes confinement for 3 years. The maximum sentence for assault consummated by a battery on a child under the age of 16 years includes confinement for 2 years. MCM, Part IV, paragraph 54e (1984).

**7.** Sergeant Gill also argues it was prejudicial error that the staff judge advocate's recommen-

dation did not expressly advise the convening authority he had the power under R.C.M. 1107(c) to take various actions on the findings. We have previously declined to graft new requirements of this sort on top of the requirements of R.C.M. 1106. *United States v. Thorn,* 36 M.J. 955 (A.F.C.M.R.1993).

**510**

American criminal law in general [8] and the military justice system in particular,[9] but the exact parameters of the doctrine of multiplicity have proven to be somewhat elusive. Perhaps experience will bear out the suspicion of many practitioners that no comprehensive definition of multiplicity is possible. However, there are definite strands of doctrine concerning multiplicity for findings that are reasonably well established.

 One established principle is that similar acts committed on separate occasions may be charged separately. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *United States v. Doss*, 15 M.J. 409 (C.M.A.1983); *United States v. Garcia*, 24 M.J. 518 (A.F.C.M.R.1987). The government may elect to use a "course of conduct" approach to charging, under which the accused is charged with performing similar criminal acts on divers occasions during a stated period. When it does so, a second charge alleging an individual criminal act of the same nature on a date within the charged period is multiplicious for findings. *United States v. Maynazarian*, 12 U.S.C.M.A. 484, 31 C.M.R. 70 (1961); *United States v. Stephenson*, 25 M.J. 816 (A.F.C.M.R.1988), *pet. denied*, 26 M.J. 224 (C.M.A.1988).

In this case there was no multiplicity issue in the original charges, but the members' findings created one. They found Sergeant Gill guilty in Charge I of aggravated assault on Carla Gill on 13 December 1989, and then in Specification 1 of Charge II they found him guilty of the same type of conduct against the same victim on divers occasions from 15 August 1989 to 13 December 1989. Since the individual offense fell within the period of the "course of conduct" offense, Charge I and its specification should have been dismissed.

## V. APPROPRIATE SENTENCE

 The remedy on appeal for multiplicious charges is to set aside and dismiss one of them and to reassess the sentence or to order a rehearing on the sentence. If we are able to determine what sentence the trial court probably would have imposed if the error had not occurred, we may reassess. *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990); *United States v. Crowe*, 30 M.J. 1144 (A.F.C.M.R. 1990), *pet. denied*, 32 M.J. 43 (C.M.A.1990). In this case it is quite clear what the members would have done. They imposed the maximum period of confinement of 8 years for the three offenses on which they entered findings of guilty. If they were sentencing Sergeant Gill for two offenses for which the maximum sentence to confinement was 5 years, we believe they would have imposed the maximum period authorized. They apparently intended the forfeitures they adjudged to apply for the same period of time as the confinement they had adjudged. We are confident they would have taken the same action on the dishonorable discharge and the reduction in grade they imposed.

We therefore approve only so much of Sergeant Gill's sentence as provides for a dishonorable discharge, confinement for 5 years, forfeiture of $300 pay per month for 60 months, and reduction to E-1. We have given individualized consideration to the appropriateness of this sentence, weighing the nature and seriousness of the offenses, the character and military performance of Sergeant Gill, and all the circumstances documented in the record of trial. *United States v. Snelling*, 14 M.J. 267 (C.M.A. 1982). We take note that the members did not find Sergeant Gill's actions caused his daughter's death. The evidence shows, however, that his offenses constituted a cruel and oppressive course of conduct in which he repeatedly caused serious injury to a helpless infant whom he had a duty to nurture and protect. The evidence also shows he was well aware that his actions were dangerous, but he nevertheless persisted. We find the sentence as reassessed is not inappropriate.

**8.** *See Pointer v. United States*, 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208 (1894).

**9.** *See United States v. Drexler*, 9 U.S.C.M.A. 405, 26 C.M.R. 185 (1958).

Charge I and its specification are set aside and dismissed. The remaining findings and the sentence, as modified, are
AFFIRMED.

Senior Judge LEONARD and Judge JAMES concur.