UNITED STATES, Appellee,

v.

Lieutenant Colonel Doye W. ADAMS,
SSN 224–50–2719, United States
Army, Appellant.

CM 440930.

U. S. Army Court of Military Review.

9 April 1982.

R. Stuart Broom, Esquire, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Major Raymond C. Ruppert, JAGC, Captain Dennis E. Brower, JAGC, and Captain Richard W. Vitaris, JAGC.

Captain Paul E. Jordan, JAGC, argued the cause for the appellee. With him on the brief were Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, and Captain Paul K. Cascio, JAGC.

Before JONES, O'DONNELL and GARN, Appellate Military Judges.

OPINION OF THE COURT

JONES, Senior Judge:

The principal issue confronting us on appeal is the question of court-martial jurisdiction over the offenses of which appellant was convicted. The offenses arose out of the incestuous relationship between appellant and his adopted daughter. He was charged with and pleaded guilty to carnal knowledge on different occasions between December 1977 and January 1980 at Lexington, Virginia, and at Berlin, Germany;

with sodomy on different occasions between June 1979 and August 1980 at Berlin, Germany; and with conduct unbecoming an officer and gentleman during the period December 1978—November 1980 at Lexington, Virginia, and Berlin, Germany.[1] The jurisdictional issue was not raised below.

The appellant initially asserts the lack of jurisdiction over all charges and specifications. He argues that there is insufficient evidence in the record upon which the judge could make an informed decision as to service connection and thus jurisdiction, as required by *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971) and *United States v. Alef*, 3 M.J. 414 (C.M.A. 1977). Next he contends that if there is sufficient evidence in the record upon which to base a decision as to jurisdiction, that evidence when measured by the *Relford* factors establishes a lack of service connection, i. e., no jurisdiction. We will consider these contentions together.

The Court of Military Appeals intended in its *Alef* decision to set forth a procedure that would avoid the problem we face today by requiring the Government to include in the specification sufficient information to demonstrate jurisdiction over the offense. As conceived, any question as to jurisdiction would be raised by appropriate motion and the matter fully litigated in the trial forum. This ideal scenario broke down in practice, hence the jurisdictional problem facing us on appeal.

The carnal knowledge and the conduct unbecoming an officer offenses are alleged to have occurred "at Lexington, Virginia, and . . . at Berlin, Germany, a place located outside the territorial limits of the United States . . . ." The sodomy offense is alleged as occurring "at Berlin, Germany, a place located outside the territorial limits of the United States . . . ." The appellant did not challenge the specifications or seek clarification of the jurisdictional basis of the offenses. In the subsequent guilty plea inquiry, the judge ascertained from the stipulation of facts and from questioning the appellant that the acts occurred at the appellant's family residence in the civilian community of Lexington, Virginia, where appellant was on duty as an Army ROTC instructor at Washington & Lee University, and at the appellant's government quarters in Berlin, Germany, where he was assigned to sensitive intelligence positions.

Insofar as the Virginia portion of the offenses is concerned, the specifications are devoid of any facts demonstrating jurisdiction. The pleading requirement of *Alef* is a procedural rule which may be waived,[2] however, and if jurisdiction was in fact established, the appellant may not now be heard to complain. *United States v. King*, 6 M.J. 553 (A.C.M.R.1978) *pet. denied*, 6 M.J. 290 (C.M.A.1979); *pet. for reconsideration denied*, 7 M.J. 61 (C.M.A.1979). We find no factual basis in the record upon which service connection, and thus jurisdiction, can be predicated. Further, as there appears to be no factual basis that could be established upon rehearing (or limited hearing on the issue), a dismissal of that portion of the charged offenses is appropriate.

The jurisdictional issue regarding the Berlin offenses is another matter. First, as to the *Alef* pleading requirement, the allegation that Berlin is a place outside the territorial limits of the United States is a sufficient demonstration in the specification of a factual basis for jurisdiction. *United States v. Lewis*, 6 M.J. 581, 586 (A.C.M.R. 1978). Next, in applying the *Relford* factors to the facts elicited during the guilty plea inquiry, we find that service connection is shown overwhelmingly.

Foremost among the factors supporting service connection is the situs of the offenses in an occupied zone of a foreign

---

1. Violations of Articles 120, 125, and 133, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, and 933 respectively. The variations in the dates of the offenses were caused by the statute of limitations, the daughter's age, and the facts of the case.

2. The substantive issue of jurisdiction, as contrasted to the pleading issue, may not be waived and may be asserted at this time. Paragraph 67*b*, *Manual for Courts-Martial*, United States, 1969 (Revised edition).

country. Regardless of the nature of the civilian government and the prosperity of the city, Berlin remains under military occupation, to which our military presence and the stone and steel boundary barriers so jarringly attest. The offenses occurred in government furnished family quarters within the American sector, a place under military control. The victim was not performing a duty related to the military but was a dependent authorized to be in Berlin and live in the quarters. There is a connection between the appellant's military duties and the crimes, considering the sensitive nature of appellant's assignment and his special susceptibility to foreign pressures if his sexual activities became known.

One final factor, and one hotly contested by the appellant before us, is the availability of an American civilian court to try the appellant. He contends that the United States Court for Berlin is such a court and cites *United States v. Tiede and Ruske*, 86 F.R.D. 227 (U. S. Court for Berlin 1979) to support his point. We disagree. That Court was established by the United States High Commissioner for Germany and its status derives from the United States occupation. It has no authority to try American soldiers without the permission of the Commander-in-Chief, US Army Europe. The court has never tried an American serviceman; in fact it has tried only one case in its existence. There is no reasonable possibility that the Commander-in-Chief would have authorized such a trial here and thus there is no available civilian court.[3] Upon weighing all *Relford* factors, we find service connection, and therefore court-martial jurisdiction over the Berlin offenses.

■ The appellant also contends that even if this Court finds jurisdiction over the Berlin offenses, the references to the Virginia offenses, the "bunching . . . of all alleged acts within a single specification . . .", so tainted the properly charged Berlin offenses that nothing short of dismissal of charges or a new trial will suffice. He argues that he might not have pleaded guilty had he known he would only have to defend against the Berlin offenses. Again we disagree with appellant's contention.

One of the primary reasons appellant pleaded guilty was to avoid any further trauma to his family. A plea of not guilty to the Berlin offenses, if those acts had been the only ones charged, would have been as devastating to the family as would a plea of not guilty to the offenses as charged. Therefore, we do not believe the inclusion of the Virginia offenses affected his decision on his plea.

■ As to the "bunching" of acts into a single specification, and for the moment without regard to the jurisdictional issue, the practice of charging in one specification a series of acts occurring in different places over a period of time is an accepted procedure in military law. *United States v. Schumacher*, 2 U.S.C.M.A. 134, 7 C.M.R. 10 (1953); *United States v. Anderson*, 1 M.J. 498 (A.F.C.M.R.1975); *United States v. Voudren*, 33 C.M.R. 722 (A.F.B.R.1963); *United States v. Batchelor*, 19 C.M.R. 452 (A.B.R.1955). In fact it is to an accused's benefit in that the punishment is limited to that for one occurrence. If an accused is unsure of what he has to defend against, he has the remedy of a motion for appropriate relief. Here there is absolutely no indication that appellant was misled. To the contrary, there is every indication that he knew exactly what he was defending against and he is protected from prosecution for acts within the specified period.

Although the practice of pleading a series of acts in a single specification is generally permissible, when a portion of those acts falls outside the court's jurisdiction, a new dimension is added. Here the court-martial lacked jurisdiction over the Virginia portion of the alleged offenses. Whether or not evidence of those acts would be admissible was never litigated and we are left to speculate as to whether the prosecution could have brought that information before the court members.

<hr/>

3. We do not have to confront the issue of whether the unavailability of a U. S. civilian court is a requirement for trial by courts-mar-

tial overseas. *See United States v. King*, 6 M.J. 553 (A.C.M.R.1978).

 

We do not have to speculate on the impact of that information, however, for even assuming that evidence of the Virginia phase of appellant's sexual misconduct was not admissible, we are convinced that the appellant was not prejudiced from that disclosure. The Berlin phase of appellant's misconduct commenced in June 1979. Although the carnal knowledge charge had a termination date of 17 January 1980, the sexual intercourse with his daughter continued until November 1980 when the daughter reported it. These offenses covered such a lengthy period of time that we believe the court members would have imposed the same sentence without regard to the Virginia offenses. However, even assuming that appellant was prejudiced on the sentence adjudged by the court, that prejudice was dissipated by the convening authority's reduction of the confinement from 21 years to 2 years, and reduction of the total forfeitures to forfeiture of $1218.00 pay per month for 24 months.

 We have considered the remaining assigned error concerning the judge's instruction on sentencing. The judge correctly told the members in response to a question that they could not adjudge a forfeiture to be paid to the appellant's family as support but that they could consider the amount (full or partial) of any forfeiture they desired to adjudge. His instructions not to consider the administrative consequences of a sentence were, in context, appropriate and proper. With regard to the instruction that the members "should consider the period of time over which the defendant committed these acts with his daughter . . .", any error from his failure to limit this to the Berlin offenses was nonprejudicial for the reasons discussed in the preceding paragraph.

Only so much of the specification of Charge I is affirmed as finds that the appellant did at Berlin, Germany, a place located outside the territorial limits of the United States, on divers days from June 1979 to on or about 17 January 1980 commit the offense of carnal knowledge with Tina Lynn Adams. Only so much of the specification of Charge III is affirmed as finds that the appellant did at Berlin, Germany, a place located outside the territorial limits of the United States, on divers days from June 1979 to on or about 28 November 1980 wrongfully have sexual intercourse with his daughter, Tina Lynn Adams, said conduct unbecoming an officer and a gentleman. The remaining findings of guilty and the sentence are affirmed.[4]

Judge O'DONNELL and Judge GARN concur.

---

4. Approved sentence: Dismissal, confinement at hard labor for two years, and forfeiture of $1218.00 pay per month for 24 months.