UNITED STATES

v.

**Airman First Class Richard A. NEBLOCK, Jr., FR341–74–1131, United States Air Force.**

**ACM 30419.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 10 Nov. 1992.

Decided 21 July 1994.

Appellate Counsel for Appellant: Colonel Terry J. Woodhouse, Colonel Jay L. Cohen, and Captain Robert E. Watson.

Appellate Counsel for the United States: Colonel Richard L. Purdon, Colonel Jeffery T. Infelise, Captain David C. Wesley, and Captain Jane M.E. Peterson.

Before DIXON, SNYDER, RAICHLE, HEIMBURG, GRUNICK, YOUNG, PEARSON, and SCHREIER, Appellate Military Judges.

## OPINION OF THE COURT

HEIMBURG, Senior Judge:

Airman First Class Neblock was convicted, pursuant to his pleas, of one specification of committing indecent acts and one specification of taking indecent liberties with his stepdaughter, then 6 years of age, in violation of Article 134, UCMJ, 10 U.S.C. § 934 (1988). His approved sentence is a bad-conduct discharge, confinement for 48 months, forfeiture of $250 pay per month for 48 months, and reduction to E–1.

The two specifications alleged "divers occasions" of conduct over identical time periods at the same place. Trial defense counsel moved to have the specifications declared multiplicious, but the military judge found them separate for findings and sentence. Appellant asserts the military judge erred in ruling the two specifications separate for sentencing. We specified a second issue— whether the specifications are multiplicious for findings. We conclude the two specifications violate the prohibition against double punishment and combine them. As a result, we reassess appellant's sentence.

### I. Multiplicity Law

A discussion of multiplicity in military law today must begin with the Court of Military Appeals' decision *United States v. Teters,* 37 M.J. 370 (C.M.A.1993). *Teters* buried the confusing line of military precedents based on *United States v. Baker,* 14 M.J. 361 (C.M.A.1983), and accepted the vitality of recent federal precedents based on *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Gone are the "fairly embraced," "single impulse," and

"insistent flow of events" tests of *Baker* and its progeny. In their place is the search for legislative intent. The prohibition against multiple convictions announced by *Blockburger* is grounded in the Double Jeopardy Clause of the Fifth Amendment and prohibits multiple punishment only when an accused, contrary to Congress' intent, is convicted at a single trial of more than one offense for the "same act or course of conduct." *Teters*, 37 M.J. at 373.

■ The analysis required by *Teters* and *Blockburger* follows certain steps. The first is to determine whether two specifications allege offenses which arose out of the same act or course of conduct. This requires a preliminary analysis of the facts. In this case the facts are that appellant, on several days during the period alleged, committed indecent acts by touching his step-daughter or having her touch him. On some, but not all, of those days, as part of the same unbroken chain of events, he also masturbated in his step-daughter's presence and view. Each occasion which involved both touching and masturbation was one continuous event in which appellant's actions were not separated by any interval of time. We find, therefore, that the two specifications allege offenses which arose out of the "same act or course of conduct."

Having found that both specifications arose out of the same course of conduct, the *Teters* framework for analysis requires a search for legislative intent: did Congress intend that a military member be subject to conviction (and punishment) for both when they arose out of the same act or course of conduct? The terms of the statute—Article 134, UCMJ, 10 U.S.C. § 934 (1988)—clearly show legislative intent to provide for a scheme of multiple offenses, but nothing in the statute itself makes clear whether Congress intended more than one Article 134 conviction arising out of one act or transaction. *See United States v. Zubko*, 18 M.J. 378 (C.M.A.1984).

Overt legislative intent was missing in *Teters* also, so the Court of Military Appeals took the next step and applied the *Blockburger* rule of construction for charging more than one offense arising out of the same act or course of conduct in violation of more than one criminal statute—in that case, Articles 121 and 123, UCMJ, 10 U.S.C. §§ 921 and 923 (1988). This rule of construction is the statutory elements test: offenses are not multiplicious when proof of each requires proof of an additional fact not required to be proved for the other. *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309; *Teters*, 37 M.J. at 370.

■ The Court of Military Appeals has yet to state how the *Teters/Blockburger* rule of construction will apply to multiple prosecutions or specifications under Article 134, UCMJ, 10 U.S.C. § 934 (1988). We believe that when we are considering prosecutions under the "general article," Article 134, we look, not at the statutory language of Article 134, but at the particular offense or offenses recognized under Article 134. For a determination of multiplicity, absent other evidence of "legislative intent," we believe the *Blockburger* rule applies. In other words, when prosecutions for multiple offenses under Article 134 are examined for multiplicity, we believe each paragraph of Part IV of the Manual for Courts-Martial, 1984, (MCM) must be considered a "statute" for purposes of analysis. *See Zubko*, 18 M.J. at 382–86 (discussion of whether possession of a drug was a lesser-included offense of distribution of the same drug under Article 134 used *Blockburger* caselaw analysis and treated the pertinent paragraph of the Manual for Courts-Martial, United States, 1969 (Rev.), (MCM, 1969 (Rev.)) as a "statute").

## II. Two Offenses or One?

We now consider whether the Article 134 specifications in this case, indecent acts with a child under 16 and indecent liberties with a child under 16, state two different offenses. The military judge seems to have treated them as such. However, our examination of the origins of indecent liberties and indecent acts with a child (as contained in the MCM, Part IV, ¶ 87) and their elements show they are merely subsets of the same offense.

Manuals for courts-martial prescribed by the President have recognized "indecent acts with a child under the age of 16 years" as an offense for more than 40 years. Its applica-

tion to the Air Force predates the adoption of the UCMJ. *Compare United States v. Brown,* 3 U.S.C.M.A. 454, 13 C.M.R. 10 (1953) *and* MANUAL FOR COURTS-MARTIAL, UNITED STATES, 1951 (MCM, 1951), ¶ 213 *with United States v. Hopp,* 4 C.M.R. (AF) 706 (A.F.B.R.1951) *and* MANUAL FOR COURTS-MARTIAL, U.S. AIR FORCES, 1949 (MCM (AF), 1949), ¶ 183c. The model specification and manual guidance for indecent acts with a child were drafted from a District of Columbia Code provision. *Brown,* 13 C.M.R. at 12; *Hopp,* 4 C.M.R. (AF) at 715–16. Like the District of Columbia Code offense, the pre–1984 manuals for courts-martial described the prohibitions against indecent liberties with and indecent acts upon children as one offense. MCM, 1969 (Rev.) ¶ 213f(3); ¶ 213d(3); MCM (AF), 1949, ¶ 183c. The earliest judicial interpretation by the Court of Military Appeals is consistent with the notion that indecent acts or liberties with a child is one offense, not two. *Brown,* 13 C.M.R. at 12–17. Although the current MCM lists the elements for indecent acts and indecent liberties separately, like its predecessors it provides only one sample specification. MCM, Part IV, ¶ 87b and f.

In summary, the Court of Military Appeals and the President have consistently considered the prohibitions against indecent liberties and indecent acts with children as but one offense, which may be proved in two different ways: with a touching (indecent acts) or without (indecent liberties.) *Brown,* 13 C.M.R. at 17; MCM, Part IV, paragraph 87b. Since the only difference in the proof required for an indecent liberty is the absence of a touching, there is no additional fact required to be proved that is not required to be proved for an indecent act with a child. *See Teters,* 37 M.J. at 370. We believe the history of this offense and its treatment in the MCM justify our conclusion that, in effect, both specifications found appellant guilty of the same offense.

### III. Duplicitous Pleading

■ Successive manuals for courts-martial, at least since the Air Force began, have discouraged drafting a specification which alleges more than one offense, "either conjunctively or in the alternative." *Compare* MCM,

1969 (Rev.), ¶ 28b, MCM, 1951, ¶ 28b, and MCM(F), 1949, ¶ 29b, *with* R.C.M. 307(c)(4).

At the same time, however, military courts have approved pleading multiple acts of the same offense as a "course of conduct." *See United States v. Schumacher,* 7 C.M.R. 10, 11–12 (C.M.A.1953), *United States v. Adams,* 13 M.J. 728 (A.F.C.M.R.1982). The rationale is that such pleading reduces the complexity of trials by reducing the number of specifications, while protecting the accused against successive prosecutions under the double jeopardy rule. *See United States v. Grubbs,* 13 M.J. 594, 596 (A.F.C.M.R.1982).

■ An accused member has the right to object to a specification which alleges more than one offense, but there is usually no incentive to do so, for a specification which alleges multiple acts of misconduct reduces the potential punishment by limiting it to the maximum for the greatest offense pled within that specification. *United States v. Reed,* 26 M.J. 891, 894 (A.F.C.M.R.1988); *United States v. English,* 25 M.J. 819, 822 (A.F.C.M.R.1988); *Adams,* 13 M.J. at 730, *Grubbs,* 13 M.J. at 596. *See United States v. Poole,* 24 M.J. 539, 542 (A.C.M.R.1987). The effect of such pleading is to reduce multiple criminal acts, which could have been punished separately, to one crime.

Each specification in this case pleads multiple criminal acts "at divers occasions." Under the foregoing principles, each specification must be treated as alleging one offense for punishment purposes, despite the fact that each could have been pleaded as several crimes in several specifications.

### IV. Double Punishment

■ That brings us to the question of the effect of the pleading in this case. The Fifth Amendment double jeopardy clause

embodies three protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *U.S. v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267

(1976); *U.S. v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); *Ex parte Lange,* 85 U.S. 163, 21 L.Ed. 872 (1873). J. CISSELL, FEDERAL CRIMINAL TRIALS, § 1001 (3d ed. Supp.1993). The question is, when two specifications allege identical conduct as multiple acts on "divers occasions" over a period of time, and both allege the same offense, for how many crimes may a person be punished?

■ When one specification alleges an offense occurring over a period of time as a course of conduct and another specification alleges the same offense (the same time, same victim, and same place), the court is limited to one maximum punishment. *United States v. Maynazarian,* 12 U.S.C.M.A. 484, 31 C.M.R. 70 (1961), *United States v. Gill,* 37 M.J. 501, 508–510 (A.F.C.M.R.1993), *United States v. Stephenson,* 25 M.J. 816 (A.F.C.M.R.1988). Here we find that all of the conduct alleged in specification 1 includes all of the conduct alleged in specification 2; hence, appellant's convictions for indecent liberties and indecent acts with a child over the same time period were multiplicious for findings. Therefore, the maximum punishment which could have been adjudged included only 7 years confinement, not the 14 years the military judge determined. MCM, Part IV, ¶ 87e.

## V. Merger and Reassessment

■ We have not previously discussed whether the Court of Military Appeals' decision in *Teters* is to be applied retroactively or prospectively only. This case was tried before the opinion in *Teters* was issued, but we do not believe we need to address the issue of retroactivity because we see no difference in the outcome under either pre-*Teters* or post-*Teters* rules. Appellant's acts with his step-daughter involving touching and those not involving touching would certainly be punished as one offense under pre-*Teters* multiplicity law because they arose as part of the same transaction or continuous course of events "under one roof and within a relatively short period of time." *Cf. United States v. Haas,* 22 C.M.R. 868, 877 (A.F.B.R.1956). We believe they also would be considered one for findings, as each time the appellant com-mitted indecent liberties he also committed indecent acts "as part of a single transaction," even though he committed more indecent acts than liberties. *See, e.g., United States v. Langford,* 15 M.J. 1090, 1094 (A.C.M.R.1983) (sodomy and lewd and lascivious acts in same transaction.) In either event, the maximum punishment would have been limited to 7 years of confinement, not 14, as the military judge determined here.

■ The military judge's ruling on separate punishment undoubtedly had some impact on appellant's sentence. We note the trial counsel asked for 5 years confinement, and argued that the length of time of appellant's acts with the victim was aggravating. Nevertheless, we also note the trial was before a military judge sitting alone, who made very specific findings of fact concerning appellant's conduct. We believe, therefore, we can determine with some certainty what sentence the military judge would have adjudged apart from his error in determining the specifications alleged separately punishable offenses. We believe the adjudged sentence would have been a bad-conduct discharge, confinement for 42 months, forfeiture of $250 pay per month for 48 months, and reduction to E–1. Moreover, we find the sentence, as modified on reassessment, appropriate. *United States v. Peoples,* 29 M.J. 426, 428 (C.M.A.1990), *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1988).

## VI. Conclusion

The approved findings of guilty are modified as follows. The specifications of the Charge are consolidated into one, unnumbered specification, as follows:

In that AIRMAN FIRST CLASS RICHARD A. NEBLOCK, JR., United States Air Force, 31 Test and Evaluation Squadron, did, at or near California City, California, on divers occasions between on or about 1 March 1992 and on or about 31 May 1992, commit indecent acts upon [JW], a female under 16 years of age, not the wife of the said A1C Neblock, by touching her private parts and inserting his finger into her vagina, and by having her place her hands on his penis, and take

indecent liberties with [JW] by exposing his penis and masturbating in the presence of [JW], all with the intent to gratify the sexual desires of the said A1C Neblock.

We have considered the remaining assignment of error and the government's reply thereto, and find it without merit. The approved findings of guilty, as modified above, and the sentence, as modified on reassessment, are hereby

AFFIRMED.

Judges GRUNICK (who participated before his retirement from the Air Force), YOUNG, PEARSON, and SCHREIER concur.

DIXON, Chief Judge (dissenting):

I can find no support in law, fact, or logic for the result reached by the majority in this case. In my view, it is just plain wrong![1] If I am right, this decision gives appellant a sentencing windfall which is not warranted by the law, not deserved by the facts, and not understandable through simple logic. I disagree with the majority's conclusion appellant was twice convicted for the same criminal act and that we must merge the two specifications into one. To reach its result, the majority establishes a completely new way for this Court to view the issue of multiplicity when criminal acts are alleged to have been committed on divers occasions.[2] I write separately to indicate the basis for my disagreement. At the outset, let me say there are very few areas of the law which have been more confusing and perplexing in re-

cent years than multiplicity. I submit this decision only adds to that confusion by misapplying existing precedent to the facts before us.

The majority finds appellant's convictions on two specifications violate the prohibition against twice punishing an individual for the same offense under the Double Jeopardy Clause of the Fifth Amendment.[3] Most often, the question concerning whether an accused has been twice punished for the same criminal act arises when an accused is charged with two separate statutory offenses as a result of actions or behavior occurring at the same time. *See United States v. Teters,* 37 M.J. 370 (C.M.A.1993). Occasionally, we see it arise as a result of the same crime being charged, for example when an accused at the same trial is convicted of a series of specific acts occurring between certain designated dates as well as for the *same* specific act on a date encompassed within the designated time period. *See United States v. Gill,* 37 M.J. 501 (A.F.C.M.R. 1993); *United States v. Stephenson,* 25 M.J. 816 (A.F.C.M.R. 1988), *pet. denied,* 26 M.J. 224 (C.M.A.1988). In both situations, we know what acts or behavior give rise to the "double jeopardy" concern because they are essentially the same in both specifications. However, this is an entirely different situation. This case fits neither mold. I disagree with the majority that double jeopardy concerns arise when a series of specific acts (like fondling a child's vagina) are charged separately from a different series of specific acts (like masturbating in the presence of a child).

---

1. If both indecent touchings (as alleged in specification 1) and masturbation (as alleged in specification 2) had occurred each time appellant molested his stepdaughter, I readily would have joined with the majority. However, that was not the case. As the majority concedes: "On some, but not all, of those days, as part of the same unbroken chain of events, he also masturbated in his stepdaughter's presence and view." This statement acknowledges separate criminal acts occurred at differing times. My dissent rests on the fact the military judge *established on the record,* in this case, that the criminal acts as alleged were distinctly committed.

2. This case focuses on the generic crime charged rather than on the facts alleged to determine what constitutes the "course of conduct" being prosecuted.

3. The majority opinion apparently deals a death knell to "course of conduct" or "on divers occasions" type pleadings within the Air Force when the same crime is alleged by or within two specifications encompassing the same time frame. Unless it is overturned, I suggest this opinion will have far reaching consequences in those broad categories of cases which we frequently see committed repetitively, i.e. drug, sexual, child abuse or spousal assault offenses. For example, the rationale suggests a course of conduct involving only possession of drugs may not be separately prosecuted from a course of conduct involving possession of the drug with intent to distribute, even if you could separate the courses of conduct within the same time frame.

The acts and behavior alleged in these two specifications are not the same, are not essentially the same, and, I would contend, are not even similar in nature. How, then, can it be said they result in double jeopardy when it can be shown clearly the first series of acts occurred, on at least two occasions, at times different from the times the second series of acts occurred, notwithstanding their occurring within the same overall time period?

If there is anything clear among the considerable obfuscation which surrounds the entire multiplicity area, it is that even the same offense may be separately charged and punished when committed at differing times. *See United States v. Johnson*, 38 M.J. 88 (C.M.A.1993). I find no criminal act for which this appellant was convicted that would support a claim he has suffered double jeop-

ardy. It is not enough merely to say "the two specifications allege offenses which arose out of the same 'course of conduct.'"[4] In order for the double jeopardy provision to apply, the two specifications must twice punish the exact same criminal act or actions. Regardless of whether the offenses of indecent acts and taking indecent liberties are deemed as one or two offenses within the military, the result should be the same under the facts of this case. When an accused is convicted on multiple specifications found to be multiplicious for findings, the warranted relief is to dismiss any specifications found to be multiplicious. That relief is unwarranted here because the conduct alleged in each specification is different and the military judge found the differing conduct occurred at separate times.[5]

4. I submit the majority mistakenly concludes the two specifications allege the same course of conduct in stating "each occasion which involved both touching and masturbation was one continuous event in which appellant's actions were not separated by any interval of time." No one would dispute (at least here) that appellant's conviction of specification 2 punished him for all acts committed on the several occasions on which appellant masturbated *as if* they were but one offense. However, what was not punished by the finding of guilty of specification 2 were those separate acts of indecent touchings which occurred on those occasions when appellant did not also masturbate. Those acts were punished only by appellant's conviction of specification 1. We know that because the military judge found appellant's plea to specification 1 provident only after finding two separate instances of indecent acts by appellant with his stepdaughter at times when he had not masturbated. This record makes it crystal clear what acts the military judge used to accept appellant's plea to specification 1. Only the first two occasions of indecent touchings, which occurred separate from any acts of masturbation, formed the basis for the finding of a provident plea to specification 1.

5. Strange as it may seem, I am offering, in support of my separate dissent, two cases which the majority also cites to support its conclusion. *See United States v. Langford*, 15 M.J. 1090, 1094 (A.C.M.R.1983); *United States v. Haas*, 22 C.M.R. 868, 877 (A.F.B.R.1956). Again, I suggest the majority overlooks a critical point in these cases. In both cases, unlike the situation here, there was *no showing on the record* that separate punishable acts occurred. In *Langford*, the Army Court of Military Review observed:

If the evidence at trial had demonstrated that fellatio was committed on some occasions and

cunnilingus on others—that there were instances when both were not perpetrated as part of one continuous sodomitic assault—the findings of guilty could be affirmed and the offenses separately punished. *United States v. Massey*, 34 C.M.R. 930 (A.F.C.M.R.1964). However the testimony of the two victims does not establish the distinct perpetration of either variation of the offense. Cynthia B. testified that during her residence in Germany, her father committed vaginal and oral sodomy on many occasions. Her sister, Barbara, also testified that numerous instances of fellatio and cunnilingus occurred. Nowhere, however, does the Government establish that the offenses were distinctly committed. The offenses are thus, multiplicious.

Similarly, in *Haas*, in an Air Force case only involving indecent acts, the outcome was dictated by an absence of any evidence of record to show separate punishable acts. The pertinent portion of the opinion reads as follows:

We find from the evidence that while the acts which were alleged and proved as indecent acts were not the same, they occurred under one roof and within a relatively short period of time. We are thus faced with having to determine whether we are dealing with a continuous course of sexual misbehavior, which legally can be punished in only one aspect, or whether we have a succession of separate acts, punishable as such. We find that the evidence of record fails to establish the latter premise beyond a reasonable doubt.

Unlike the situation in *Haas*, the indecent acts which were not accompanied by acts of masturbation did not occur within a "relatively short period of time" but on separate days altogether and, more importantly, the military judge was able to establish on the record that two separately punishable acts occurred.

Airman First Class Neblock admitted to sexually molesting his six-year-old stepdaughter on several different occasions between 1 March 1992 and 31 May 1992. All of the incidents occurred in appellant's home while his wife, the mother of the victim, was at work. J, the stepdaughter, recalls the incidents occurring around the time of her sixth birthday which was 28 April 1992. The record does not establish exactly how many different times J was molested although the stipulation of fact clearly documents several different incidents.

The portion of the stipulation of fact dealing with the acts of molestation reads as follows:

On or about 1 May 1992, the Accused took [J] to his bedroom and closed the door and blinds. The Accused took off his pants and underwear. [J] took off her pants and panties, and they laid on his bed wearing only their shirts. The Accused showed [J] his penis and had [J] touch his penis. The Accused had an erection during this time. Then the Accused inserted his finger into [J's] vagina and moved his finger around inside of her vagina in a circular motion. [J] said that it "tickled." The Accused told [J] to not tell her mother about what they did.

On or about 3 May 1992, the Accused and [J] went into [J's] bathroom, and they both took off their clothes. [J] touched the Accused's penis, and he had an erection. The Accused then masturbated himself in front of [J] and ejaculated into some toilet paper and showed the semen to [J]. The accused then touched [J] in the vaginal area and put his finger into her vagina. Again, the Accused told [J] not to tell anyone what they had done. The Accused told [J] that if he wanted to do this again that [J] should tell him, "No."

There was another incident that occurred in [J's] bedroom. [J] was in the bathroom and came out and pointed at her vaginal area and said that it hurt and asked the Accused to rub some vaseline on it. While the Accused was rubbing the vaseline in her vagina, [J] said it "tickled." The Ac-

cused unzipped his pants and showed [J] his penis, and [J] touched his penis and scrotum.

If [J] is called to testify, she can recall approximately eight times that the Accused touched her in the vaginal area. The Accused recalls touching [J] in the vaginal area and inserting his finger into her vagina approximately three to five times, however, there could have been more times that he forgot.

[J] also recalls several times that she observed the Accused masturbating himself and ejaculating in front of her. The accused recalls that he masturbated in front of [J] and ejaculated about two or three times. The Accused knows that he did not masturbate every time he touched her in the vaginal area, however, there could have been more instances that he could not remember.

Airman Neblock was brought to trial on two specifications of sexual molestations. Both specifications covered the exact same time period. The only difference in the two specifications was the description of the offenses being charged. The two specifications read as follows: [6]

SPECIFICATION 1: In that AIRMAN FIRST CLASS RICHARD A. NEBLOCK, JR., United States Air Force, 31 Test and Evaluation Squadron, did, at or near California City, California, on divers occasions between on or about 6 July 1991, and on or about 26 June 1992, commit indecent acts upon the body of [J] a female under 16 years of age, not the wife of said A1C Neblock, by touching her private parts and inserting his finger in her vagina, and having her place her hands on his penis, with intent to gratify the sexual desires of the said A1C Neblock.

SPECIFICATION 2: In that AIRMAN FIRST CLASS RICHARD A. NEBLOCK, JR., United States Air Force, 31 Test and Evaluation Squadron, did, at or near California City, California, on divers occasions between on or about 6 July 1991 and on or about 26 June 1992, take inde-

6. At trial the inclusive dates for both specifications were amended to read "between on or about 1 March 1992 and on or about 31 May 1992."

cent liberties with [J], a female under 16 years of age, not the wife of said A1C Neblock, by exposing his penis and masturbating in the presence of [J], with the intent to gratify the sexual desires of the said A1C Neblock.

The charges reflect the government's intent to punish appellant for those occasions when he masturbated in J's presence apart from other occasions when he indecently touched J but did not engage in masturbation. It is an established principle that similar acts committed on separate occasions may be charged separately. *United States v. Gill*, 37 M.J. 501, 510 (A.F.C.M.R.1993).[7] Since each of the acts of molestation committed by appellant occurred on separate occasions, appellant presumably could have faced a minimum of five separate specifications in this case. Had the government exercised that option, and if convicted on each of them, he could have been punished separately for each offense. However, we are bound by the way the government elected to charge these offenses. We only can consider the two specifications charged.

In both specifications, the government elected to use a so called "course of conduct" approach to pleading. Appellant entered pleas of guilty to both specifications and, following the Care[8] inquiry by the military judge, was found guilty on both counts. The question we face on appeal is whether he was twice punished for the same offense. In other words, may the acts involving indecent touchings and no masturbation be prosecuted and punished separately from the acts involving indecent touchings accompanied by masturbation? The majority answers "no" and I would answer "yes." Further, I contend the answer is always "yes" when it is possible, on the basis of the record, to separate and distinguish the offenses factually. In this case, the military judge thoroughly sifted the evidence and entered specific findings of separability, and the record firmly supports his findings.

I part company with my brethren in the majority on the matter of whether appellant's two convictions at trial were for the same "course of conduct." The words in specification 1, "by touching her private parts and inserting his finger in her vagina, and having her place her hands on his penis," do not describe the same course of conduct as the words in specification 2, "by exposing his penis and masturbating in the presence of" the victim. The proof which the government must present to win a conviction on the respective specifications as alleged is different and distinct.[9] Common sense, logic, a review of legal precedents, and the mere reading of the specifications tell me two separate courses of conduct are being charged. The two specifications simply do not describe the same course of conduct and, using the

7. Citing for the same proposition: *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *United States v. Doss*, 15 M.J. 409 (C.M.A.1983); *United States v. Garcia*, 24 M.J. 518 (A.F.C.M.R.1987).

8. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

9. The Manual for Courts–Martial (1984) separately lists the elements of the offenses of indecent acts and taking indecent liberties based upon whether or not the victim received physical contact. The elements read as follows:

\* \* \* \* \* \*

b. *Elements.*

_____(1) *Physical contact.*

(a) That the accused committed a certain act upon or with the body of a certain person;

(b) That the person was under 16 years of age and not the spouse of the accused;

(c) That the act of the accused was indecent;

(d) That the accused committed the act with the intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of the accused, the victim, or both; and

(e) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

(2) *No physical contact.*

(a) That the accused committed a certain act;

(b) That the act amounted to the taking of indecent liberties with a certain person;

(c) That the accused committed the act in the presence of this person;

(d) That this person was under 16 years of age and not the spouse of the accused;

(e) That the accused committed the act with the intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of the accused, the victim, or both; and

(f) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. MCM, Part IV, paragraph 87(b) (1984).

"elements" test, do not charge the same offense.

I would decide the issue of multiplicity in this case using the basic rule established by *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In the *Blockburger* opinion, we read the following:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

284 U.S. at 304, 52 S.Ct. at 182.

Each of the specifications in this case requires proof of an additional fact which the other does not. In specification 1, the government must prove a touching of the victim by appellant. No physical contact is required to be proven in order to obtain a conviction on specification 2. In specification 2, the government must prove an act of masturbation to obtain a conviction as well as an exposure of his penis. No proof of masturbation or exposure is required to convict on specification 1.[10] Because both specifications require proof of facts not required by the other, neither stands in the position of being a lesser included offense of the other. *Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). Under the "elements" test, these specifications charge separate offenses for which separate punishment may be adjudged.

The following language from *Gill*, 37 M.J. at 510 addresses the multiplicity concerns raised when specifications allege acts occurring on divers occasions:

> The government may elect to use a "course of conduct" approach to charging, under which the accused is charged with performing similar criminal acts on divers occasions during a stated period. When it does so, a second charge alleging an individual criminal act of the same nature on a date within the charged period is multiplicious for findings. *United States v. Maynazarian*, 12 U.S.C.M.A. 484, 31 C.M.R. 70 (1961); *United States v. Stephenson*, 25 M.J. 816 (A.F.C.M.R.1988), *pet. denied*, 26 M.J. 224 (C.M.A.1988).

By including "on divers occasions" in each of the two specifications being considered here, the government forced the military judge and now this Court to wade through the multiplicity quagmire. Unlike the majority, the military judge found a solid factual foundation during his inquiry into the events charged which was necessary for separate convictions. The military judge recognized the government could escape the multiplicity peril only if the facts clearly showed the two specifications could be separately prosecuted under existing double jeopardy principles.

Faced with a defense motion to dismiss, the military judge initiated a careful and thorough providence inquiry. Exactly what facts did the military judge have to find in order to be satisfied that the pleas of guilty to the two specifications were provident? Would it have been enough if the facts clearly showed the required separate courses of conduct as alleged in the two specifications both occurred on more than one occasion? The answer could be "yes" only if "committing indecent acts" and "taking indecent liberties" are deemed separate offenses for punishment purposes and the *Blockburger* "elements" test is the sole test for making a multiplicity determination. The answer was clearly "no" because this case was tried before the *Teters* decision by the United States Court of Military Appeals.[11] The military judge also had to satisfy the multiplicity requirements of *United States v. Baker*, 14 M.J. 361 (C.M.A.1983). *Baker* applied to specifications arising out of the same transaction regardless of whether, on their face,

---

10. The language in specification 1 "having her place her hands on his penis" may suggest the likelihood of an exposure of his penis however no proof of exposure would be required. If he had placed her hand on his penis inside his trousers or while his penis was covered by a sheet, the proof of a touching would be satisfied without an exposure.

11. *United States v. Teters*, 37 M.J. 370 (C.M.A. 1993). This case overruled the "fairly embraced" test for determining lesser included offenses within the military.

they alleged the same or separate offenses. *Baker*, under its "fairly embraced" test, struck down specifications which would survive today but saved no specifications which failed the *Blockburger* analysis. Since the requirements of *Baker* were more stringent than those in *Blockburger*, the military judge had to broaden his inquiry to ensure the separate acts as alleged in specification 1 were not part of the same transactions being charged in specification 2. The facts had to show clearly the required separate courses of conduct alleged in the two specifications both occurred on more than one occasion to the exclusion of the other. The military judge discharged his responsibility and his findings should be upheld.

We can easily determine from the record of trial which acts the military judge found to support the plea of guilty to each specification. He zeroed in on just four of the occasions in which acts of sexual molestation occurred. There can be no doubt the military judge found two occasions of indecent touchings as alleged when no masturbation occurred for the purpose of finding the plea to specification 1 provident and two separate incidents of masturbation to support a provident plea to specification 2. Had the military judge been less diligent in sorting out the facts during the guilty plea inquiry, it may have been difficult, if not impossible, to argue appellant was not twice convicted for the same criminal behavior.

The following colloquy occurred during the providence inquiry concerning the number of separate occasions in which appellant molested his stepdaughter:

MJ: All the events that we are going to talk about took place in California City, California?

ACC: Yes, sir.

MJ: Did they all take place in the dates that you plead to, between 1 March 1992, and 31 May 1992?

ACC: Yes, sir.

MJ: Those are the kind of facts that aren't that different to deal with. The more difficult ones are exactly what happened, and your intent, and things of that nature. So I will let you begin

wherever you choose to begin, but I need to know what happened.

ACC: Between the end of April and the end of May 1992, I performed indecent acts on my step-daughter, [J]. On divers occasions, I took [J] into my bedroom, and we both took off our clothes, and I touched her and [J] touched me. When I say touched, I mean I that I placed my hand on her vaginal area, and [J] placed her hand on my penis. On this occasion, I did not masturbate. The number of times we saw and touched each other, was approximately 4 times.

The first time was in my bedroom. The other times was in [J's] bedroom or bathroom. On the second, third, and fourth time, I touched [J] again in the vaginal area, and she touched my penis. I rubbed in small circles, my finger did pass through her vagina. I don't know how far, but I would guess about a quarter to a half an inch. On the third and fourth occasion, which was in [J's] bathroom, I did masturbate and ejaculate into some tissue, and I threw it in the toilet and flushed it. I never had [J] masturbate me. After, we would get dressed and watch some television.

MJ: Basically, what you are telling me at this point and time, is you recall four occasions specifically?

ACC: Yes sir.

MJ: Now in the stipulation, you said you recalled three to five. Is that an estimate or do you recall four specifically, but there may have been some more?

ACC: Yes, your honor, I recall four, but there may have been some more.

MJ: The stipulation also says that [J] recalls approximately eight times, and I assume your explanation would be the same—there may be more, but you don't recall.

ACC: Yes, sir.

Later, when the military judge desired to clarify the existence of divers occasions covering the events described in both specifications, the following colloquy occurred:

MJ: Well, part of the providence that I need to clarify is the charge, divers occa-

sion, and if he said two, then that is good enough to get a providence plea.

TC:    I understand, but I am concerned about the one, sir. The indecent act.

MJ:    To my understanding—What is your recollection of the first occasion that you had with [J]?

ACC:   The first occasion was, as I recall, was just touching only.

MJ:    There was no masturbation?

ACC:   No, sir, there wasn't.

MJ:    On the second occasion?

ACC:   Yes, sir, I believe there was. (ACC and IDC confers.)

ACC:   No sir, there was none on the second occasion. There was no masturbation.

MJ:    So there were two occasions, when there was no masturbation? I am confused now.

The first two occasions, there was touching only, and on the third and fourth occasion there was touching and masturbation?

ACC:   Yes, sir.

MJ:    You heard it right and I heard it wrong.

TC:    I request the court clarify one more point. On the first touching, I believe he said on the Care inquiry, though I may be confused, that the touching involved of his touching of her vaginal area, and the child touching his penis.

MJ:    That's what my notes say. Did she touch your penis on the first and second occasion?

ACC:   Yes, sir.

On the basis of the matters before him, the military judge issued his ruling on the defense's multiplicity for findings motion as follows:

For purposes of the motion, I incorporate the stipulation of fact and the accused's responses during the providence inquiry. Based on these two items, I find that there are no incidents of masturbation in [J's] presence that was not accompanied by an indecent touching. However, there was at least two occasions when the accused touched [J] and she touched him as alleged in specification 1 when there was no masturbation. When reviewing the case law, as in [sic] often in the case of multiplicity, you can find almost a case for every proposition. These cases have a tendency to turn on their facts. After review of the cases provided by the defense, and some cases I reviewed on my own, I concluded that although these offenses are similar, there is a difference of elements and there is a difference of societal norms, such that I find these are separate offenses for findings. The motion for findings—multiplicity for findings is denied.

I have been unable to discern from the majority opinion why the military judge's ruling was erroneous or how appellant was punished twice for the same criminal act. I concur fully with the discussion of case law in the majority opinion but believe the application of that case law to this case is flawed. Stated simply, the law asserted in the majority opinion does not in my view require the result which the majority reaches. I feel obliged to discuss some of the cases cited by the majority and present why I think the conclusion reached here does not logically follow.

The majority opinion states "When one specification alleges an offense occurring over a period of time as a course of conduct and another specification alleges the same offense (the same time, same victim, and same place), the court is limited to one maximum punishment." From my reading of the lead opinion, it is this statement, more than any other, which the majority relies upon for its holding. I have no argument with the principle as stated, but contend it does not apply to this situation. In order for the principle to apply here, the specification being questioned on multiplicity grounds must factually allege the same offense or criminal acts of the same nature. In stating the principle, the majority opinion indicates it is the same offense when there is "the same time, same victim, and same place." When a specification alleges "on divers occasions" does it mean that all acts done during the period occurred at the same time? I suggest it does not. "On divers occasions" means

nothing more than the acts alleged occurred on two or more occasions. "On divers occasions" does not convert a series of individual acts into a continuous offense involving only one crime.[12] "On divers occasions" *does* mean that all acts *alleged* will be punished together and the maximum punishment shall be the same as if the acts had occurred only one time. *United States v. Grubbs,* 13 M.J. 594 (A.F.C.M.R.1982).

The three cases, which the majority cites in support of this key statement of law, *Gill, Stephenson,* and *Maynazarian* are distinguishable, factually and on the record, from the instant case. Unlike the instant case, you could not ascertain, in any of those cases, that the acts for which separate punishment was sought did not occur at the same time because they were of the exact same nature.

In *Gill,* the facts are somewhat unique. The issue of multiplicity was not raised by the pleadings. Rather, the issue was created by the members' findings. Gill was initially charged in separate counts with unpremeditated murder and on divers occasions with aggravated assault on the same victim with a means likely to produce death or grievous bodily harm to wit: his hands. The alleged date of the unpremeditated murder was 13 December 1989 and the alleged dates of the aggravated assaults were between 1 August 1980 and 13 December 1989. By exceptions and substitutions, the members found Gill guilty on the unpremeditated charge to the lesser offense of aggravated assault with a means likely to produce death or grievous bodily harm, to wit: his hands. As a result of the members' findings, the behavior in both findings was exactly the same and since both occurred within the same time period, there was no way to say Gill had not been punished twice for the same offense. Consequently, this Court dismissed the single instance of aggravated assault as multiplicious.[13]

In *Stephenson,* the government charged appellant with six drug possession specifica-

tions. Each specification alleged the same drug and the same vicinity. The first five specifications alleged specific dates and the sixth specification alleged a five-month period which encompassed all of the dates alleged in the first five specifications. This Court dismissed the first five specifications as multiplicious with the sixth. The Court concluded:

> The government is free to charge events such as those in this case as a series of separate specifications, or they can charge them as a single specification. What is improper is to go to findings on both the specific-series specifications and the related "umbrella" specification.

*Stephenson,* 25 M.J. at 817.

Since the conduct alleged (possession of a specific drug) in the first five specifications was the exact same conduct alleged in the sixth specification, the Court had to dismiss the separate specifications to prevent appellant from being twice punished for the same criminal act. Had the "umbrella" specification alleged a different drug, I submit there would have been no double punishment for the same offense. Why? Because the behavior would have been different notwithstanding the fact the acts violated the same statutory crime and were done at the same time and same place. Just as possessing different illicit drugs are differing ways of violating the same offense, acts of indecent touching and taking indecent liberties via acts of masturbation are differing ways of violating Article 134, UCMJ. Unlike the situation in *Stephenson* where the same nature of the conduct made it impossible to conclude the offenses were separate, the factual differences in the alleged conduct in this case leads me to the inescapable conclusion that Neblock was not subject to double punishment for the same criminal acts.

In *Maynazarian,* appellant was convicted of two specifications of larceny. In specification 1, it was alleged that he stole the sum of $2,698.37, property of the United States dur-

---

12. See *Blockburger,* 284 U.S. at 302, 52 S.Ct. at 181 for a discussion of a continuous offense.

13. Interestingly, the military judge in *Gill,* offered to ask the members if they found separate offenses, but neither counsel asked that he do so and he did not. Unlike the situation in *Gill,* the behavior is not exactly the same in the two findings of guilty now before us.

ing the period of 26 December 1959 to 5 May 1960. In specification 2, it was alleged he stole the sum of $350.60, property of the United States on or about 20 April 1960. The United States Court of Military Appeals was unable to say that appellant had not been punished twice for the same offense because the record did not show that the offense (money embezzled) on 20 April 1960 was distinct from the offenses (monies embezzled) under specification 1. In its opinion, the Court stated:

> The record is devoid of any evidence demonstrating that the two offenses charged were separate. The Government, recognizing its burden of establishing that the specifications do not twice charge the same crime, urges that accused's unsworn statement in mitigation and extenuation shows two distinctive offenses when he related that he had embezzled sums from the Navy Exchange in which he worked over a period of months, culminating in the final theft of the amount alleged to have been taken in specification 2. To the contrary, it would seem that the allegation in the first count of a period of time which encompasses the date alleged in the second count, implies that the latter separately alleged a larceny which was part and parcel of the former.

*Maynazarian*, 31 C.M.R. at 71.

Neither *Gill, Stephenson*, nor *Maynazarian* deals with the situation before this Court in this case.[14] In each of those cases, the series of acts (namely, aggravated assaults with a means likely to produce grievous bodily harm, possessions of an illegal drug, and money embezzlements) were the same acts as those covered in the specification found to be multiplicious. Because they were the same acts, the Courts correctly concluded the specific act must be included for purposes of punishment within the series of acts encompassing the period of the specific act. In this case, the series of acts charged in specification 1 were not the same series of acts

charged in specification 2. There were no *findings of guilty* which indicated Neblock had done the acts alleged in specification 1 at the same time that he did the acts alleged in specification 2.

As an aside, I believe the majority opinion is flawed in attempting to apply any of the *Teters* analysis to this case. *Teters* addresses the multiplicity question only when the same act or course of conduct is charged under different statutes. That case mandates that the first step is to determine whether Congress intended each crime to be separately punished. Only in the absence of an express intent of Congress does *Teters* resort to the *Blockburger* rule of construction to permit prosecution under more than one statute where each statutory provision requires proof of an additional fact which the other does not. We are not faced in this case with two different criminal statutes. Both specifications here are charged under Article 134, UCMJ. Nothing in *Teters* calls for this case to be decided differently than it would have been under the law prior to *Teters*.[15] No rule of statutory construction is needed when you have the exact same statutory crime charged. If the exact same crime is twice charged for the same conduct, at the same time, with the same victim, the multiplicity call is easy—it is the same crime which may not be separately punished.

Finally, I disagree with the majority's conclusion that indecent acts with a child under 16 and indecent liberties with a child under 16 are the same offense. I can find no reported case saying the two are always the same offense in the military. I believe the military judge was correct in finding the two offenses in this case were separate. I have already discussed why I feel the "elements" test qualifies them as separate offenses. The majority's assertion that "they are merely subsets of the same offense" flies in the face of reality. As the majority concedes, the elements of those offenses of sexual molestation with a child involving physical contact

---

14. If this were the same type situation faced by the Courts in *Gill, Stephenson,* and *Maynazarian,* there would be nothing to merge. The remedy would be to dismiss the specification found to be multiplicious.

15. This Court has repeatedly affirmed approved findings of courses of conduct involving both indecent acts and taking indecent liberties during the same time frame when the actions of the accused as alleged were not the same.

are listed separately in the Manual for Courts–Martial from those offenses of sexual molestation with a child that involve no physical contact. MCM, Part IV, paragraph 87 (1984).

I contend the majority also misses the boat when it states: "Since the only difference in the proof required for an indecent liberty is the absence of a touching, there is no additional *fact* required to be proved that is not required to be proved for an indecent act with a child." In order to prove an indecent act with a minor, the government must prove "an act upon or with the body" of the minor which is indecent. There is no requirement to prove any "physical contact" whatsoever to convict an accused of taking an indecent liberty with a minor. To prove a taking of an indecent liberty, the government must prove "that the act amounted to a taking of indecent liberties" (the act itself does not have to be indecent) and that the accused "committed the act in the presence" of the minor. Neither of these elements are specifically required to be proved for an indecent act offense. In this case, the taking of an indecent liberty was provided by the act of masturbation. In the instant case, the accused's act of masturbation would not have been an indecent act if it had not been committed in the J's presence. Under *Blockburger*, there can be no doubt that specifications alleging indecent acts and taking indecent liberties may survive the "elements" test for multiplicity.[16]

When a comparison of elements logically tells me they are different, I cannot bring myself on the basis of the 1953 *Brown* decision to conclude, as did the majority, that indecent liberties and indecent acts with children are but one offense in the military today. For me, it is a giant leap from the *Brown* holding that indecent liberties may be committed without any physical contact to the conclusion that taking indecent liberties is the same offense as an indecent touching. While it is not necessary for purposes of this case, it is time, in my view, for a clear appellate pronouncement that indecent liberties and indecent acts are not the same offenses within the military and may be separately prosecuted when the acts supporting each offense are different and distinct. They are differing ways of describing service discrediting conduct with a child and, in the eyes of this judge, are, in situations like the case before us now, two separate offenses.

For the reasons expressed herein, I must respectfully dissent from the majority's conclusion appellant was twice punished for the same offense and must therefore receive a sentence reassessment. I would affirm the findings of guilty and the sentence as adjudged.

SNYDER, Senior Judge, with whom Senior Judge RAICHLE joins (dissenting):

I cannot add any substantive matter to Chief Judge Dixon's thorough factual analysis of the instant case, with which I agree fully. However, I believe some comment is in order on what I believe to be two incorrect legal conclusions implicit in the majority opinion.

The majority's position flows almost entirely from the manner in which the Government charged appellant, via so-called *"course of conduct"* specifications, and its interpretation of what constitutes a "course of conduct." This term is used quite commonly, but little is ever written on what it means and its actual legal impact. Although the precedents approve "course of conduct" pleading on the permissible basis of pleading several offenses as one *continuous transaction, see e.g., United States v. Maynazarian,* 12 U.S.C.M.A. 484, 31 C.M.R. 70 (1961) and cases cited therein, "course of conduct" pleading does not, *by operation of law,* convert several separate offenses into one continuing offense, *except for purposes of punishment.* Neither the mode of pleading nor the label, *"course of conduct,"* mutate the inherent nature of the offense charged.

This principle was established early in our legal history in *Ex Parte Snow,* 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887), where the Court reversed convictions on separate counts of wrongful cohabitation, stating:

---

16. In *Blockburger,* the specifications found not to be multiplicious involved separate statutory provisions of the same criminal offense and not two separate criminal statutes.

It is, inherently, a continuous offense, having duration; and not an offense consisting of an isolated act....

A distinction is laid down in adjudged cases and in text-writers between an offense continuous in its character, like the one at bar, and a case where the statute is aimed at an offense that can be committed *uno actu.*

*Snow,* 120 U.S. at 282 and 286, 7 S.Ct. at 559 and 562, 30 L.Ed. at 661 and 663. The language quoted above should sound very familiar, for it also is quoted in *Blockburger,* where *Snow's* rationale was instrumental in *Blockburger's* holding. *Blockburger v. United States,* 284 U.S. 299, 302, 52 S.Ct. 180, 181, 76 L.Ed. 306 (1932). The terms of a statute dictate its application. Therefore, we should not allow labels of convenience to dictate how we apply a criminal statute. As Justice Douglas cautioned:

The [Fair Labor Standards] Act does not speak of "course of conduct." *That is the Court's terminology, not the Act's....* The violations may be continuous and follow a set pattern; or they may be sporadic and erratic. The Act does not differentiate between them. Nothing is said about "course of conduct."... Yet until this case no court, so far as I can learn, has ever had the inventive genius to suggest that "course of conduct" rather than the "employee" is the unit of the crime.

*United States v. Universal C.I.T. Credit Corporation,* 344 U.S. 218, 227, 73 S.Ct. 227, 232, 97 L.Ed. 260, 266–67 (1952) (Douglas, J., dissenting) (emphasis added). Article 134 does not contain the phrase, "course of conduct." With this guidance in mind, I now turn to *Brown.*

The majority is correct in its observation that *Brown's dicta* concluded indecent acts and indecent liberties were separate ways of committing the same offense. However, neither *Brown* nor its progeny supports the conclusion that, during a given time frame, indecent acts and indecent liberties cannot coexist separately or that one swallows the other. To the contrary, they stand or fall separately, as the Court duly observed:

We must, of course, interpret the language of the Manual in such a way as to carry out the intent of the President. In doing that, it becomes necessary to consider the words employed, the necessity for the law ... and afford a remedy for the evils which it is the purpose of the Manual to guard against.

The wording of the Manual expresses clearly *two distinct branches of this particular offense.* One branch leads to those offenses which do not act upon the body except in a subjective way, the other leads to that type of conduct which involves assault and battery.... The necessity for the law was to throw a cloak of protection around minors and to discourage sexual deviates from performing with, or before them.

*United States v. Brown,* 3 U.S.C.M.A. 454, 460–61, 13 C.M.R. 10, 16–17 (1953) (emphasis added). As Chief Judge Dixon so forcefully avers, pleading either in a "course of conduct" specification neither turns the charged misconduct into a continuing offense nor into a *generic* crime, thereby merging any indecent act or liberty which may have occurred during the period charged. Appellant's "course of conduct" were the specific acts alleged in each specification. When the Government alleged "on divers occasions," appellant clearly was placed on notice the Government intended to prove several separate commissions of the two separate branches of the offense.

The majority's approach will, as a matter of law and regardless of the factual posture of a case, deprive the Government of the ability to prove, and punish, separate instances of indecent acts upon, and indecent liberties with, a child. This is contrary to *Brown's* view and our own precedents.

Our predecessor Board of Review determined the matter solely on the applicable facts of separability, and not that indecent acts and liberties were one and the same, even when charged during the same time frame. Faced with altered findings on the specification of a charge and an additional charge of taking indecent liberties, the Board disposed of an asserted claim of multiplicity as follows:

The situation before us is materially different from that which was present in *United States v. Maynazarian, supra.* Here, the evidence of record graphically demonstrates that the two offenses found by the court were separate. True, the time element in each offense was alleged to be during the period on or about 15 May 1961 to 22 January 1963, however, *this does not preclude the Government from showing individual separate distinct acts within that period.*

*United States v. Massey,* 34 C.M.R. 930, 940 (A.F.B.R.1964) (emphasis added).[17] *Cf. United States v. Haas,* 22 C.M.R. 868, 877 (A.F.B.R.1956), *pet. denied,* 22 C.M.R. 331 (C.M.A.1956) (Evidence did not establish whether a separately charged indecent liberty via fondling and an indecent act via touching were a succession of separate acts or occurred in conjunction with each other).

Both of the above cases were decided with *Blockburger* as the prevailing navigational beacon. Yet, the facts of the particular case dictated the outcome. I join Chief Judge Dixon in being unable to discern any reason why post-*Teters* application of *Blockburger* dictates a different approach or result. It's all in the facts! In the instant case, the military judge painstakingly found separate occurrences of indecent acts to the exclusion of instances of indecent acts and liberties occurring contemporaneously, and the record firmly supports his findings.

Consequently, I believe the "course of conduct" label led the majority to succumb to the subconscious temptation of viewing the charged offenses in each specification as one continuous, generic indecent liberty, rather than appellant committing the offenses via the distinctive modes charged. Further, I believe the majority's merging the two specifications effectively treats one as an included offense of the other. There simply is no precedent to support this. Accordingly, I respectfully dissent.

---

**17.** At least one panel of the Army Court of Military Review also has found this approach legally permissible. *See United States v. Langford,* 15 M.J. 1090, 1094 (A.C.M.R.1983) citing *Massey.*